A JUVENILE *vs.* COMMONWEALTH

Suffolk. February 5, 1976. — May 12, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Delinquent Child. Jurisdiction,* Delinquent child, Transfer hearing. *Practice Criminal,* Probable cause hearing, Transfer hearing.

Discussion of recent developments in the treatment of juvenile complaints. [275-277]

An adjudicatory hearing in a District Court juvenile session was not required by G. L. c. 119, § 61, as appearing in St. 1964, c. 308, § 2, to be conducted prior to a hearing on whether a juvenile should be tried as an adult. [278]

There was no constitutional or statutory requirement that a probable cause or evidentiary hearing be held on a juvenile complaint before a transfer hearing. [278-280]

Guidelines for transfer hearings to be conducted in accordance with G. L. c. 119, § 61, as appearing in St. 1975, c. 840, § 1. [280-283]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 28, 1975.

The case was reserved and reported by *Reardon,* J.

*Jean-Claude D. Sakellarios* for the plaintiff.

*Gerard F. Gillis,* Assistant District Attorney, for the Commonwealth.

---

HENNESSEY, C.J.   The plaintiff commenced this action in the Supreme Judicial Court for the county of Suffolk pursuant to G. L. c. 211, § 3, by filing a petition for relief in the nature of certiorari, and a motion for a stay of the proceedings in the court below. A statement of agreed facts was filed by the parties, and a single justice of this court reported the matter without decision for a determination by the full court.

This case raises substantial questions concerning the procedures and criteria by which a District Court judge, sitting in juvenile session, may dismiss a juvenile complaint and order the issuance of an adult complaint. The plaintiff claims that a nonadjudicatory transfer hearing which is held prior to a hearing on the merits of the juvenile complaint conflicts with statutory requirements; that the transfer hearing which was conducted in the District Court violated his constitutional rights; and that the decision to dismiss the juvenile complaint was not required by the "public interest" (see G. L. c. 119, § 61, as appearing in St. 1964, c. 308, § 2) in view of the evidence presented at the hearing.

Although we conclude that no error has been demonstrated in this case when viewed in light of the law existing at the time of the proceeding below (July 24 and 25, 1975), we find that, on the facts of this particular case, the interests of justice would best be served by our remanding the case for a new hearing which will include a consideration both of transfer and probable cause.[1] This result, although not constitutionally or statutorily mandated, is, in the circumstances, consistent with "the proper administration of criminal justice" (see *Commonwealth* v. *Martin,* 355 Mass. 296, 301 [1969]), for, while we recognize that the judge conscientiously applied the then controlling law, we believe that his task was complicated by the fact that the statutes, rules of court, and case law (see Recent Legal Developments, § I, *infra*) relating to transfer hearings were in

---

[1] Although we have granted the relief sought, we nevertheless discuss, see § II, *infra,* the plaintiff's allegations of error.

a constant state of flux. Since no probable cause hearing on the adult complaint has yet been held, it is appropriate at this time for the transfer decision to be redetermined in accordance with newly enacted legislation (G. L. c. 119, § 61, as appearing in St. 1975, c. 840, § 1, effective December 24, 1975) and the suggestions set forth in this decision (see Guidelines for Transfer Hearings, § III, *infra*).

The facts, as agreed to by the parties, are as follows. The plaintiff, who was born on February 2, 1960, was arraigned in the Municipal Court of the South Boston District on the charge of being a delinquent child by reason of homicide. The complaint alleged that on July 4, 1975, the plaintiff caused the death of Thomas Madjerec by striking him over the head with a baseball bat. At the arraignment on the juvenile complaint, the plaintiff was found to be indigent and counsel was assigned to represent him.

On July 24 and 25, 1975, a hearing was held in the juvenile session at which the presiding judge informed the parties at the outset that he intended to conduct a preliminary nonadjudicatory transfer hearing, the purpose of which was to determine whether the plaintiff should be tried as an adult and not to hear evidence relating to the merits of the case. Despite objection by counsel for the plaintiff, the assistant district attorney gave a statement, at the judge's request, outlining the Commonwealth's evidence and giving an account of the alleged homicide. The judge announced that this introductory statement would not be considered as evidence but was in the nature of an opening argument. The assistant district attorney proceeded to describe the events surrounding the victim's death which occurred in South Boston on the evening of July 4, 1975, during a fight in which the plaintiff was one of many participants. According to the assistant district attorney's statement, the victim had interceded in order to break up the fight, and, in the process, had pushed the plaintiff. In response, the plaintiff called for his friend to get him a bat and, as the victim was walking away from the scene of the fight, the plaintiff hit him several times over the head with the baseball bat. The victim died two days later.

Following this opening statement, the plaintiff presented evidence relative to the issue whether he should be treated as a juvenile. Testimony was given by the boy's mother, his school guidance counselor, a doctor who specializes in psychiatry, and employees of the Department of Youth Services, the Probation Department, and the Department of Correction concerning the plaintiff's background and psychological condition and the availability of programs and facilities for youthful offenders in the Commonwealth.

At the conclusion of the hearing on July 25, 1975, the presiding judge entered findings and an order dismissing the juvenile complaint so that the plaintiff could be tried for the offense of murder instead of being dealt with as a child. Immediately following, the plaintiff was arraigned on an adult complaint charging him with murder. The probable cause hearing on the adult complaint, continued to July 31, 1975, has since been continued from time to time at the plaintiff's request, and, as a consequence, no probable cause hearing has yet been held.

I. *Recent Legal Developments.*

Prior to the United States Supreme Court's decision on May 27, 1975, in *Breed* v. *Jones,* 421 U.S. 519 (1975), the practice in this Commonwealth under G. L. c. 119, § 61, as appearing in St. 1964, c. 308, § 2,[2] and Rule 85A of the Rules of the District Courts (1965), as amended,[3] had

---

[2] General Laws c. 119, § 61, reads as follows: "If it be alleged in a complaint made under sections fifty-two to sixty-three, inclusive, that a child has committed an offense against a law of the commonwealth, or has violated a city ordinance or town by-law, and if such alleged offense or violation was committed while the child was between his fourteenth and seventeenth birthday, and if the court is of the opinion that the interests of the public require that he should be tried for said offense or violation, instead of being dealt with as a delinquent child, the court may, after a hearing on said complaint, order it dismissed."

[3] Rule 85A of the Rules of the District Courts, which became effective on May 7, 1973, provided in part: "If the court after the hearing on the juvenile complaint deems necessary a consideration of whether to dismiss the juvenile complaint and to try the child as an adult for the offense, the court shall, subject to a continuance if requested by the child, proceed to hold a separate hearing on this question.... If the court shall determine to dismiss the juvenile complaint and try the child as an adult, such determination shall be accompanied by a

been to conduct an evidentiary hearing on the juvenile complaint prior to a transfer hearing. At the transfer hearing, if the judge decided to decline jurisdiction, the juvenile complaint was dismissed pursuant to G. L. c. 119, § 61, and an adult complaint was issued forthwith under G. L. c. 119, § 75. See generally *A Juvenile, petitioner,* 364 Mass. 531 (1974).

In May, 1975, the Supreme Court rendered its decision in *Breed* relating to juvenile proceedings in California. In that case, the defendant had been convicted of robbery in a Superior Court trial following an adjudicatory hearing in Juvenile Court at which it was determined that he had violated a criminal statute but that he was unfit for treatment as a juvenile. The Court held "that the prosecution of respondent in Superior Court, after an adjudicatory proceeding in Juvenile Court, violated the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment." 421 U.S. at 541. As pointed out by the Supreme Court, the basic effect of its holding was "to require, in most cases, that the transfer decision be made prior to an adjudicatory hearing."[4] *Id.* at 536. See *Stokes* v. *Commonwealth,* 368 Mass. 754 (1975).

Shortly after the decision in *Breed,* and before the proceedings in this case, the Chief Justice of the Massachusetts District Courts issued a memorandum directive which altered Rule 85A of the Rules of the District Courts, see note 3 *supra.* Under the amended Rule 85A, in accordance with *Breed,* the District Court judge was required to hold

---

finding in writing of the facts demonstrating that the interests of the public require such determination, and the case shall be set down for a hearing on the adult criminal complaint as to probable cause to bind over the child to the next sitting of the Superior Court."

[4] The court in *Breed* further stated: "We require only that, whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain, and embarrassment of two such proceedings." 421 U.S. at 537-538.

a transfer hearing prior to an adjudicatory hearing. In effect, the transfer hearing was a preliminary proceeding which was to be followed by either a probable cause hearing on the adult complaint or a Juvenile Court trial on the delinquency complaint, depending on the result of the transfer hearing.[5]

Subsequently, G. L. c. 119, § 61, was amended by St. 1975, c. 840, § 1 (effective December 24, 1975), so as to require a judge to make a determination, during the transfer hearing, as to whether probable cause exists. General Laws c. 119, § 61, as amended, further provides that a judge, before dismissing a juvenile complaint, must enter a "written finding based upon clear and convincing evidence that the child presents a significant danger to the public as demonstrated by the nature of the offense charged and the child's past record of delinquent behavior, if any, and is not amenable to rehabilitation . . . ."[6]

II. *The Proceedings Below in this Case.*

Although we are granting the relief sought in this case, we consider it useful to discuss the alleged errors as argued by the plaintiff. This discussion may be helpful in determining the rights of other juveniles who were involved in similar nonadjudicatory transfer proceedings that occurred in the intervening period between *Breed* and the amendment to G. L. c. 119, § 61, by St. 1975, c. 840, § 1.[7]

---

[5] The memorandum directive also alters Rule 85A by adding the requirement that a different judge must preside at the adjudicatory hearing on the juvenile or adult complaint, unless this provision is waived by counsel for the juvenile. See *Breed* v. *Jones,* 421 U.S. at 536-537.

[6] Under the amended version of G. L. c. 119, § 61, if a judge finds that probable cause exists to believe that the child has committed the offense as charged, he is directed then to consider the following factors relating to the issue of transfer: "(a) the seriousness of the alleged offense; (b) the child's family, school and social history, including his court and juvenile delinquency record, if any; (c) adequate protection of the public; (d) the nature of any past treatment efforts for the child; and (e) the likelihood of rehabilitation of the child."

[7] We take note of the suggestion raised below that any asserted error in the transfer hearing may be cured after a trial in the Superior Court pursuant to G. L. c. 119, § 83 (but see *Commonwealth* v. *A Juvenile,* 363 Mass. 640, 643 [1973]), and that such post-trial consideration does not appear to conflict with the doctrine enunciated in *Breed* v. *Jones, supra.*

On appeal, the plaintiff claims that the District Court judge, sitting in juvenile session, had no statutory authority under the then controlling statute (G. L. c. 119, § 61, as appearing in St. 1964, c. 308, § 2, see note 2 *supra*) to conduct a transfer hearing prior to a hearing on the merits of the juvenile complaint. We do not agree.

Although it may have been the practice in this Commonwealth to conduct an adjudicatory hearing in Juvenile Court prior to a transfer hearing, see *Commonwealth* v. *A Juvenile,* 363 Mass. 640 (1973), we do not believe that this practice was statutorily mandated. In view of the principle that a statute must be construed so as to avoid constitutional doubts, see *Worcester County Nat'l Bank* v. *Commissioner of Banks,* 340 Mass. 695, 701 (1960), we believe that G. L. c. 119, § 61, as appearing in St. 1964, c. 308, § 2, may be read as permitting a nonadjudicatory transfer hearing prior to an evidentiary hearing on the complaint, and that such a transfer hearing would fulfil the requirement of a "hearing on ... [the] complaint." See *Stokes* v. *Commonwealth,* 368 Mass. at 768 n.2.

Having concluded that a transfer hearing could have been conducted prior to an adjudicatory hearing under the then governing statute, we now turn to the plaintiff's claim that an evidentiary or probable cause hearing on the merits of the complaint is constitutionally required before a decision to dismiss a juvenile complaint may be rendered. Although we recognize that it is permissible under *Breed* to introduce substantial evidence at the transfer hearing to show that the juvenile committed the offense in question, see *Stokes* v. *Commonwealth, supra* at 762, we do not believe that such an evidentiary showing is constitutionally mandated. The Supreme Court in *Breed* declined to express any opinion as to whether an evidentiary hearing with respect to the commission of the offense was a necessary component of a transfer hearing.[8] It indicated that

[8] We note that under the California law that was before the Court in *Breed,* a Juvenile Court judge was not required to conduct an evidentiary hearing on the complaint before transferring the juvenile to adult court. 421 U.S. at 536 n.16.

"the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court." 421 U.S. at 537. See note 4 *supra.*

A transfer hearing is not intended to resolve the issue of the juvenile's guilt or innocence, and, in fact, under *Breed,* it would be unconstitutional to do so. Rather, the Juvenile Court, at the time of this proceeding, had to determine whether it was in "the public interest" to treat the juvenile as an adult (see G. L. c. 119, § 61, as appearing in St. 1964, c. 308, § 2) by considering such factors as the amenability of the child to treatment as a juvenile, the seriousness of the alleged offense, and the necessity of safeguarding the public from the child. See note 12 *infra.* After the transfer hearing, under the then prevailing law, if jurisdiction was waived by the judge, the juvenile was entitled to a probable cause hearing on the adult complaint. This sequence was considered by then Circuit Judge Stevens to "adequately protect a person's rights; there is no constitutional requirement that a probable cause showing must be made twice." *United States ex rel. Bombacino* v. *Bensinger,* 498 F.2d 875, 878 (7th Cir.), cert. denied, 419 U.S. 1019 (1974).

Finding no constitutional or statutory requirement (under the then controlling statute) to hold a probable cause or evidentiary hearing on the complaint before transferring a juvenile to adult court,[9] we cannot agree with the plaintiff's contention that he was denied the opportunity to

---

[9] Although we hold that an evidentiary hearing is not constitutionally mandated, we believe that the preferable approach, in light of the importance of a decision to transfer a juvenile, is for there to be a determination of probable cause at the transfer hearing. In this regard, as we have noted, G. L. c. 119, § 61, as appearing in St. 1975, c. 840, § 1, requires a judge to make a determination, during the transfer hearing, whether probable cause exists. At this hearing, the judge should state in advance that the purpose of the hearing is to determine if probable cause exists and to decide if the juvenile should be transferred and not to conduct an adjudicatory hearing on the merits of the complaint. See *Stokes* v. *Commonwealth, supra* at 762-763. This procedure raises no double jeopardy problem under *Breed* and preserves more effectively the special rights and protections granted a juvenile under our statutes.

cross-examine or produce evidence in violation of his constitutional rights.

There is no question that the judge conducted a full investigation on the issue of transfer and that the hearing complied with concepts of fundamental fairness. See *Kent v. United States,* 383 U.S. 541 (1966). The plaintiff was represented by able counsel, notice was given and a statement of reasons for the judge's decision was provided. Since there was no requirement to hold a probable cause hearing,[10] the judge committed no error in refusing to allow the plaintiff to test the allegations set forth in the district attorney's opening statement. Under Rule 85A, the judge is entitled to consider the seriousness of the offense, including the nature and circumstances of the offense, to the extent that it pertains to the transfer decision. The assistant district attorney's statement was relevant to this consideration and the manner of presentation was within permissible limits, since a transfer hearing may be informal, *Kent v. United States, supra* at 561, and it need not "conform with all of the requirements of a criminal trial or even of the usual administrative hearing . . . ." *Id.* at 562.

III. *Guidelines for Transfer Hearings.*

Since we remand this case for a new transfer hearing to be conducted in accordance with G. L. c. 119, § 61, as appearing in St. 1975, c. 840, § 1, it serves no useful purpose for us to address specifically the plaintiff's argument that the judge's decision to transfer him to adult court was not warranted by the evidence.[11] Rather, as guidance for future proceedings in this case and similar cases, we offer several observations.

First, we emphasize the statutory requirement that a judge, before dismissing a juvenile complaint, must enter

---

[10] The plaintiff's reliance on *Corey* v. *Commonwealth,* 364 Mass. 137 (1973), and *Myers* v. *Commonwealth,* 363 Mass. 843 (1973), is misplaced, for the proceeding in question was not a probable cause hearing, and thus the standards prescribed in those cases are inapposite.

[11] We believe that the difficulties faced by the judge in this case have in some measure been resolved by the requirement in G. L. c. 119, § 61, as amended in 1975, that the issues of probable cause and transfer be heard together as part of one hearing.

a written finding based on "clear and convincing" evidence showing that the minor is not suitable for treatment as a juvenile. See G. L. c. 119, § 61, as amended in 1975. Further, the judge should make subsidiary findings in accordance with statutory criteria (see note 6 *supra*), Rule 85A (see note 12 *infra*) and the considerations that we outline below.

We turn now to a discussion of the relevant considerations for determining whether to transfer a juvenile to adult court. In deciding this question, it is essential to keep sight of the important consequences that result from a transfer decision and the legislative policy underlying our statutes relating to delinquent children. As noted by the Supreme Court in *Kent* v. *United States, supra* at 556, "the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." If treated as a juvenile, the plaintiff in this case, for instance, will have no criminal record (G. L. c. 119, § 53), will not be disqualified from public service (G. L. c. 119, § 60), will be eligible for rehabilitation under the care and guidance of the Youth Service Board (G. L. c. 119, § 58, and c. 120), and will be discharged at the age of eighteen unless there is a finding that his discharge would be physically dangerous to the public (G. L. c. 120, §§ 16 and 17). See *D'Urbano* v. *Commonwealth,* 345 Mass. 466 (1963). If treated as an adult, the plaintiff, who was fifteen and one-half years old at the time of the hearing, will be deprived of these substantial statutory protections and will be imprisoned for life if convicted of first degree murder. In view of the important consequences attaching to a transfer decision, it is not surprising that G. L. c. 119, § 53, mandates that the statutory sections dealing with delinquent children, including G. L. c. 119, § 61, should be construed liberally in order that children, as far as practicable, shall be treated "not as criminals, but as children in need of aid, encouragement and guidance." See *Metcalf* v. *Commonwealth,* 338 Mass. 648, 651-652 (1959). From this statutory requirement, we may infer that the Legislature intended that noncriminal treatment is to be favored and that transfer should be ordered only when warranted by exceptional

circumstances. Cf. *Kent* v. *United States, supra* at 560.

Nevertheless, a judge has considerable discretion, within this statutory framework, to determine whether a child should be treated as an adult. In exercising this discretion, a judge is to be guided by Rule 85A, which sets forth factors relevant to a transfer decision,[12] and G. L. c. 119, § 61, as amended in 1975.[13] There is no specific requirement that a judge weigh these factors in a certain manner or achieve some predesigned balance. Any factor which bears on the protection of the public and the amenability of the child to treatment as a juvenile may be considered.

However, we do not believe that a decision to transfer is proper when supported by findings which deal only with the seriousness of the charge and the inadequacy of existing juvenile facilities in terms of safeguarding the public. Despite the importance of these two factors and the weight that they may have in support of a conclusion that there should be a transfer to adult court, there must also be a finding that the juvenile cannot be rehabilitated within the present juvenile structure, or that, in the absence of long-term supervision and security, he poses a serious threat to the public, with subsidiary findings indicating the basis for this conclusion.[14] It cannot be assumed that the nature of the offense demonstrates the need for treatment beyond available juvenile facilities, for this assumption would imply that juvenile facilities will be adequate only if a child is charged with a minor offense and that, by defini-

---

[12] Rule 85A of the Rules of the District Courts states that on the question whether to try the child as an adult "the court shall consider factors such as: (1) the seriousness of the alleged offense; (2) the child's family, school and social history, including his court and juvenile delinquency record, if any; (3) the apparent emotional, social and psychological condition of the child; and (4) adequate protection of the public, the likelihood of rehabilitation of the child and the rehabilitation facilities available."

[13] See note 6 *supra.*

[14] A consideration of a child's prior record, his family and school history, his psychological and emotional development, and the nature of any past rehabilitative efforts will be relevant in evaluating a minor's amenability to treatment as a juvenile.

tion, serious offenders must be denied the statutory protections afforded juveniles. Such a conclusion ignores the rehabilitative purposes of our statutes relating to delinquent children and, in effect, restricts without legislative sanction our juvenile system to the treatment of minor offenders.

While we emphasize the need to focus on the minor's potential for successful treatment before the age of majority within existing juvenile facilities, we do not mean to suggest that there will not be instances where transfer is appropriate. It is clear that a judge, having considered all relevant factors in light of the legislative intent and having made supportive findings, may legitimately conclude that transfer is warranted.

Accordingly, we vacate the judge's order dismissing the juvenile complaint and remand for a rehearing on the issue whether the plaintiff is to be tried as an adult, including a determination whether probable cause exists and a reconsideration of the plaintiff's amenability to treatment as a juvenile, to be held in accordance with G. L. c. 119, § 61, as appearing in St. 1975, c. 840, § 1.

*So ordered.*