## COMMONWEALTH vs. A JUVENILE.

Suffolk.    April 15, 1980. — August 13, 1980.

Present: HALE, C.J., GREANEY, & DREBEN, JJ.

*Delinquent Child.   Jurisdiction,* Delinquent child, Transfer hearing.
*Practice, Criminal,* Transfer hearing, Findings by judge.   *Words,*
"Threat."

The offense of operating a motor vehicle negligently so that the lives or
   safety of the public might be endangered in violation of G. L. c. 90,
   § 24(2)(a), is an offense "involving the infliction or threat of serious
   bodily harm" within the meaning of G. L. c. 119, § 61.   [388-392]
There was no merit to a defendant's contention that an interpretation of
   G. L. c. 119, § 61, so as to include as a transferable offense a charge of
   operating a motor vehicle negligently so that the lives or safety of the
   public might be endangered would be such an unforeseeable departure
   from precedent as to violate his rights under the Fourteenth Amend-
   ment to the United States Constitution.   [392]
A single subsidiary finding that a juvenile defendant had been committed
   to the Department of Youth Services on eight separate occasions was
   not sufficient to support an order of transfer under G. L. c. 119, § 61.
   [392-394]

INDICTMENTS found and returned in the Superior Court
on April 19, 1978.

The cases were tried before *Tuttle,* J., a District Court
judge sitting under statutory authority.

*Richard Friedman* for the defendant.

*Deborah Goldman,* Legal Assistant to the District Attor-
ney (*Michael J. Traft,* Assistant District Attorney, with her)
for the Commonwealth.

DREBEN, J.   After a transfer hearing pursuant to G. L.
c. 119, § 61, a District Court judge ordered the issuance of a
criminal complaint against the fourteen year old defendant
and ordered him bound over to the Superior Court for trial
as an adult.   The defendant was subsequently convicted on

indictments charging him with operating a motor vehicle negligently so that the lives or safety of the public might be endangered (G. L. c. 90, § 24[2][*a*]) and with using a motor vehicle without authority, knowing that such use is unauthorized (G. L. c. 90, § 24[2][*a*]).

In this appeal from those convictions he challenges the process by which he was transferred from the juvenile system to the Superior Court to be handled there as if he were an adult, on a number of grounds: (1) that neither of the alleged offenses with which he was charged was an offense "involving the infliction or threat of serious bodily harm" as required by G. L. c. 119, § 61, as appearing in St. 1975, c. 840, § 1; (2) that if the language of § 61 is interpreted to include the offenses with which he was charged, such an interpretation would be such an unforeseeable departure from precedent as to violate his rights to due process under the Fourteenth Amendment to the United States Constitution; and (3) that the District Court judge's findings, which included only one subsidiary finding, were deficient. We agree with the defendant's third contention, but not with his other two.

The matter comes to us on a statement of proceedings[1] pursuant to M.R.A.P. 8(c), as amended, 378 Mass. 933 (1979). The reference to the transfer hearing is sparse and states merely that "On February 21, 1978, after a hearing, the Court . . . ordered the juvenile complaints dismissed and adult complaints to issue." The order of the District Court is reproduced in the margin[2] and is on Uniform Form DCM-12,

---

[1] The appendix includes a document entitled "Defendant's Statement of the Proceedings pursuant to Mass.R.App.P. 8(c)." At oral argument it was agreed by the parties that the statement was approved by the judge, and the docket entries confirm that fact.

[2] "*Finding and Order After Transfer Hearing.* Upon consideration at a transfer hearing held pursuant to G. L. c. 119, § 61, and Rule 208 of the Special Rules of the District Courts of Massachusetts, the court finds that probable cause exists to believe that the child has committed the offense or violation charged.

"Upon further hearing, including consideration of evidence on, but not limited to, the seriousness of the alleged offense, the child's family, school

prescribed by District Municipal Courts Special Rule 208 (1976). The material italicized in note 2 is in the judge's handwriting; the remainder is the official form.

After he was indicted, the defendant moved in the Superior Court for dismissal of the indictments on a number of grounds, including those now argued on appeal. A judge sitting in the Superior Court denied the motions and ruled "as a matter of law"[3] that the District Court's transfer order was sufficient on its face to meet the requirements of c. 119, § 61. He also ruled that the offense of operating negligent-

---

and social history, including said child's court and juvenile delinquency record, if any, adequate protection of the public, the nature of any past treatment efforts for the child and the likelihood of rehabilitation of the child, the court finds based upon clear and convincing evidence that the child presents a significant danger to the public as demonstrated by the nature of the offense charged and the child's past record of delinquent behavior, if any, and that the child is not amenable to rehabilitation as a juvenile. The court's reasons are as follows:

"*The Court finds that Defendant is not rehabilitable because he has been committed to D.Y.S. on 8 separate occasions commencing 9/74. Attached copy of record is self-explanatory.*

"WHEREUPON the delinquency complaint against the child is hereby dismissed, a criminal complaint is ordered issued, and the defendant is bound over to the Superior Court."

[3] It is not clear whether in making his rulings the judge was influenced by his findings, which included the following: At 12:30 A.M. "[w]hen Officer Varley arrived at [intersection of two streets] he saw 5-6 youths, who fled in different directions. Officer Varley pursued the defendant who was on foot, with the officer being in a cruiser. The defendant, while fleeing, came to an elderly man getting out of his vehicle, the defendant pushed the man aside, jumped into the vehicle and drove the vehicle approximately one block. Because of the snow and traffic conditions, the defendant could go no further. The defendant put the vehicle in reverse, jumped out, so that the car came in motion toward the police cruiser. The officer operating the cruiser, placed his cruiser against the vehicle's rearward motion, to prevent it from injuring anyone, while Officer Varley pursued the defendant through Egleston Station and arrested him after a brief chase."

We do not consider these findings to be relevant. The review by a judge of the Superior Court is not a de novo review of the soundness of the decision made by the Juvenile Court judge, but rather is a determination whether there has been "a material failing in the prescribed steps leading to the issuance of the order of transfer." A Juvenile v. Commonwealth (No. 1), 380 Mass. 552, 557 (1980).

ly, so that the lives or safety of the public might be endangered, is a transferable offense as it is one involving "the infliction or threat of serious bodily harm" within the meaning of G. L. c. 119, § 61.[4] On the same date as his motions to dismiss were denied, the defendant was tried jury waived and found guilty on both indictments.

We shall discuss first whether there was a transferable offense under G. L. c. 119, § 61. The defendant argues that he was not charged with an offense "involving the infliction or threat of serious bodily harm" as required by § 61, and, therefore, that there was no statutory basis for conducting a

---

[4] The portion of c. 119, § 61, relevant to this opinion appears in St. 1975, c. 840, § 1, and is set forth below.

"If it is alleged in a complaint made under sections fifty-two to sixty-three, inclusive, that a child (a) who had previously been committed to the department of youth services as a delinquent child has committed an offense against a law of the commonwealth which, if he were an adult, would be punishable by imprisonment in the state prison; or (b) has committed an offense involving the infliction or threat of serious bodily harm, and in either case if such alleged offense was committed while the child was between his fourteenth and seventeenth birthdays, and if the court enters a written finding based upon clear and convincing evidence that the child presents a significant danger to the public as demonstrated by the nature of the offense charged and the child's past record of delinquent behavior, if any, and is not amenable to rehabilitation as a juvenile, the court may, after a transfer hearing held in accordance with such rules of court as shall be adopted for such purpose, dismiss the complaint.

"At said transfer hearing, which shall be held before any hearing on the merits of the charges alleged, the court shall find whether probable cause exists to believe that the child has committed the offense or violation as charged. If the court so finds, the court shall then consider, but shall not be limited to, evidence of the following factors: (a) the seriousness of the alleged offense; (b) the child's family, school and social history, including his court and juvenile delinquency record, if any; (c) adequate protection of the public; (d) the nature of any past treatment efforts for the child, and (e) the likelihood of rehabilitation of the child.

"If the court determines that the child should be treated as a delinquent child, the court shall forthwith, on motion by or on behalf of the child, continue the proceedings until such further time as the court shall determine.

"If the court orders that the delinquency complaint against a child be dismissed it shall cause to be issued a criminal complaint."

transfer hearing[5] and no jurisdiction in the Superior Court. *Commonwealth* v. *Clark,* 379 Mass. 623, 626 (1980). He claims the word "threat" requires an intent to do harm and that an offense charging recklessness or negligence is not the subject of transfer. We disagree.

Prior to its amendment by St. 1975, c. 840, § 1, G. L. c. 119, § 61, provided that a child could be bound over to face prosecution for any criminal offense, no matter how trivial, including violations of city ordinances or town by-laws, "if the court is of the opinion that the interests of the public require that he should be tried for said offense or violation, instead of being dealt with as a delinquent child . . . ." After the Legislature, in response to *Breed* v. *Jones,* 421 U.S. 519 (1975), had sent to the Governor an amended § 61 (to separate transfer hearings from the adjudicatory hearing on the charge), the Governor sought additional changes in the statute. His proposals narrowed the scope of the offenses for which a child may be criminally prosecuted and also provided standards for deciding which children should be transferred. Message of Governor, 1975 House Doc. No. 6808. As originally proposed by the Governor, clause *(b)* of the first paragraph of § 61 would have made transferable only those offenses "involving the infliction or threat of serious bodily harm *which, if [committed by] an adult, would be punishable by imprisonment in the state prison*" (emphasis supplied). 1975 House Doc. No. 6808, at 3. However, the Legislature eliminated the italicized words from clause *(b)*. See 1975 House Journal 3084. Thus, under the bill which was enacted, the District Court has jurisdiction under clause *(b)* to bind over a child for an offense, whether it be a felony or only a misdemeanor, so long as the offense involves the "infliction or threat of serious bodily harm."

One of the meanings of "threat," as defined in the American Heritage Dictionary of the English Language

---

[5] The Commonwealth does not argue that the offense is transferable under clause *(a)* of the first paragraph of § 61. Both parties argue the applicability of clause *(b)*.

(1976) at 1340, is "An indication of impending danger or harm."[6] The first phrase of the disjunction, *i.e.*, the "infliction of . . . harm," has no requirement that the infliction of harm be intentional, and we see nothing to indicate that the second phrase, "threat . . . of harm," should be construed differently. There is nothing either in the language of the statute or in its legislative history which limits "threat of . . . harm" to intentional threats. Contrast N.J. Rev. St. § 2A: 4-48 (Supp. 1980), which allows transfer where there is cause to believe a juvenile "committed an offense against the person in an aggressive, violent and willful manner." The Legislature has also in other contexts used the term "threat" to include nonintentional threats, *e.g.*, G. L. c. 90, § 22(*a*), as appearing in St. 1969, c. 637 (registrar may revoke license after violation of motor vehicle law, if he has reason to believe that continued operation constitutes "immediate threat to the public safety"); G. L. c. 21C, § 7, inserted by St. 1979, c. 704, § 2 (requiring certification that hazardous waste does not "constitute a danger to public health . . . or a threat to the environment"). There is at least one other statute where, as here, the word "threat" covers both meanings. General Laws c. 276, § 42A, inserted by St. 1978, c. 447, § 5, permits a court to impose such terms as will insure the safety of a person on a complaint "which involves the infliction, or the imminent threat of infliction, of physical harm upon a person . . . ." We think that the natural reading of § 61 is that it authorizes transfers where an offense involves a danger (threat) of serious bodily harm.

The defendant urges that his construction is supported by legislative intent. We do not agree. In *A Juvenile* v. *Commonwealth*, 370 Mass. 272, 281-282 (1976) (hereinafter referred to as *Juvenile I*), and again in *A Juvenile* v. *Commonwealth (No. 1)*, 380 Mass. 552, 559 (1980) (*Juvenile II*), the Supreme Judicial Court stated that "the Legislature intended

---

[6] See also Webster's Third New International Dictionary (1971), which defines "threat" at 2382 as "an indication of something impending and usu. undesirable or unpleasant (the air held a threat of rain) . . . ."

that noncriminal treatment is to be favored and that transfer should be ordered only when warranted by exceptional circumstances." See also G. L. c. 119, § 53, providing for liberal construction of the provisions of §§ 52-63 inclusive.[7] The legislative preference for noncriminal treatment is a significant and useful guide to a judge exercising discretion under § 61 and other provisions of c. 119 relating to delinquent minors, and it is in the context of discretionary action that the Supreme Judicial Court, in *Juvenile I* and *Juvenile II*, spoke of legislative intent. We note that c. 119, § 53, is also directed primarily to the discretion of the trial judge. As indicated earlier, *supra* at 389, when § 53 of c. 119 was enacted in 1906, jurisdiction existed under § 61 to transfer a juvenile for any offense, including violations of a town by-law, and the judge's discretion was only limited by the welfare of the child and the interests of the public.

In any event, even if the cited legislative preference is relevant in construing the jurisdictional question, it is not of assistance here. It sheds no light on what is meant by the term "threat," and does not support the conclusion that any offense involving an intentional threat, *e.g.*, simple assault, is more appropriate for transfer than an offense which endangers the lives of the public. It may be that such a distinction is advisable as a matter of policy, but, if so, that decision is one for the Legislature. Section § 61, clause (*b*), first paragraph, provides jurisdiction for transfer of offenses "involving the infliction or threat of serious bodily harm." We hold that the offense of operating a motor vehicle negligently "so that the lives or safety of the public might be en-

---

[7] Section 53 of G. L. c. 119, which was inserted by St. 1906, § 413, ¶ 2, reads as follows: "Sections fifty-two to sixty-three, inclusive, shall be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance. Proceedings against children under said sections shall not be deemed criminal proceedings."

dangered" (G. L. c. 90, § 24[2][a], as appearing in St. 1975, c. 156, § 1)[8] is such an offense.[9]

Since we conclude that the use of this meaning of the word "threat" is a natural one and would be understood by persons of ordinary intelligence as applying to the offense charged here, there is no unforeseeable departure from precedent. We, therefore, find no merit in the defendant's due process argument. Cf. *Stokes* v. *Commonwealth*, 368 Mass. 754, 772-773 (1975).

We turn next to the question whether the process of transfer was flawed by reason of a "[s]erious deficiency in the subsidiary findings." *Juvenile II*, 380 Mass. at 558. Because the decision of transfer is "critically important," *Kent* v. *United States*, 383 U.S. 541, 560 (1966); see also *Juvenile I*, 370 Mass. at 281; *Juvenile II*, 380 Mass. at 559, extra measures of evidentiary protection for transfer proceedings have been provided by the Legislature and by court rule.[10]

By statutory mandate, the standard of proof in such cases must be "clear and convincing." G. L. c. 119, § 61. The judge must make written findings that the child presents a

---

[8] We note that "[t]o endanger the lives and safety of the public by the operation of an automobile on a public way is not an intangible and shadowy act. It has specific relation to possible contact with human beings." *Commonwealth* v. *Pentz*, 247 Mass. 500, 507 (1924). See also *Commonwealth* v. *Mara*, 257 Mass. 198, 206, 210 (1926).

[9] The defendant does not argue that both offenses with which he was charged need fall within the statute. District Court Special Rule 208 (1976) states that on transfer, "it will be better practice to cause criminal complaints to be issued on all offenses so that the Superior Court will then receive all of the offenses charged together against the same defendant."

[10] Section 61 authorizes the adoption of court rules for the conduct of transfer hearings. The sequence of District Court rules on this subject is as follows: rule 85 (effective March 4, 1969); rule 85A (effective May 7, 1973); rule 208 of the District Court Special Rules (effective July 1, 1975); and rule 208 of such rules (effective July 1, 1976), which is the current rule and under which Uniform Form DCM-12 was promulgated. See also *Commonwealth* v. *A Juvenile*, 363 Mass. 640, 641-642 (1973), for the relevant part of former rule 85 and a discussion of former rule 85A, and see *Commonwealth* v. *Clark*, 379 Mass. 623, 631-633 (1980), for a comparison of former and current procedures of transfer.

significant danger to the public and is not amenable to rehabilitation, and must consider enumerated factors set forth in § 61. In addition, the Supreme Judicial Court has held that subsidiary findings are of "vital significance." *Juvenile II*, 380 Mass. at 558. This is both to ensure the "utmost" judicial care in making the decision of transfer, see *Custody of a Minor (No. 1)*, 377 Mass. 876, 885-886 (1979), and to permit meaningful review. *Kent* v. *United States*, 383 U.S. at 561. See also *Cesarone* v. *Cesarone*, 329 Mass. 217, 220 (1952); *Moran* v. *Moran*, 5 Mass. App. Ct. 787, 788 (1977).

The transfer order here does not meet these requirements. Moreover, it suffers from virtually the same deficiencies as did the order which was vacated in *Juvenile I*. In that case, where an intentional homicide was alleged, the Supreme Judicial Court held that the nature of the offense by itself could not demonstrate the need for transfer; otherwise, juvenile facilities would be restricted without legislative sanction to the treatment of those charged with minor offenses. *Juvenile I*, 370 Mass. at 282-283. The case was remanded because there was an absence of subsidiary findings showing that the juvenile could not be rehabilitated within the juvenile structure as well as an absence of subsidiary findings indicating the basis for such a conclusion. *Juvenile II* required even more specificity in the necessary supporting findings for the crucial conclusion of nonamenability to rehabilitation. *Juvenile II*, 380 Mass. at 559-562.

Here, the only subsidiary finding made by the judge, see note 2, *supra*, was that the defendant had been committed to the Department of Youth Services on eight separate occasions. Reliance solely on the child's past record of delinquent behavior to show that the juvenile cannot be rehabilitated stands on the same footing as reliance solely on the nature of the offense. Permitting such a basis for transfer would restrict, without legislative sanction, the juvenile system to persons who do not have lengthy records of delinquent behavior, see *Juvenile I*, 370 Mass. at 283, and would allow transfer without taking into account other significant

factors required by the statute. In the absence of subsidiary findings, the present transfer order fails to show that "the nature of any past treatment efforts for the child" (c. 119, § 61), a highly relevant factor, or any of the other specific statutory factors were given adequate consideration.

There are also no subsidiary findings supporting a conclusion based on "clear and convincing evidence" that the child poses a significant danger to the public. The fact that there is jurisdiction to transfer for a specific offense does not render nugatory the additional requirement that the judge must weigh, among other things, the seriousness of the particular offense in determining whether transfer should be ordered. Instead of using Uniform Form DCM-12, see note 10, *supra*, as a helpful aid and reminder in making subsidiary findings, the District Court judge used it as a substitute for those findings.

We remand the matter to the Superior Court to be remanded to the District Court for a new hearing on the issue whether a transfer was appropriate on February 21, 1978. See *Haziel* v. *United States*, 404 F.2d 1275, 1281-1282 (D.C. Cir. 1968); *Kemplen* v. *Maryland*, 428 F.2d 169, 178 (4th Cir. 1970); *Powell* v. *Hocker*, 453 F.2d 652, 657 (9th Cir. 1971); *Knott* v. *Langlois*, 102 R.I. 517, 530 (1967). The new hearing is to be conducted in accordance with the proper standards under G. L. c. 119, § 61, and is to be held promptly in view of the rapid approach of the juvenile's seventeenth birthday. If it should appear after such hearing that a transfer was not appropriate on February 21, 1978, the date of the original transfer, the defendant shall be treated as a delinquent child and will be entitled on motion in the Superior Court to a vacation of his convictions. If adequate revised findings indicate that the transfer was appropriate, the convictions will stand. See *Juvenile II*, 380 Mass. at 562-563; *Kemplen* v. *Maryland*, 428 F.2d at 178. See also *Kent* v. *United States*, 383 U.S. at 565.

*So ordered.*