## Two Juveniles vs. Commonwealth
### (and a companion case[1]).

Suffolk.  September 10, 1980. — November 6, 1980.

Present: Hennessey, C.J., Braucher, Wilkins, & Liacos, JJ.

*Delinquent Child.  Jurisdiction,* Delinquent child, Transfer hearing.
*Practice, Criminal,* Probable cause hearing, Transfer hearing, Juven-
ile delinquency proceedings.  *Supreme Judicial Court,* Superintend-
ence of inferior courts.

In determining whether to transfer a child for adult proceedings, a judge
    is not required by G. L. c. 119, § 61, to make written findings as to the
    five factors denominated (*a*) through (*e*) in the statute.  [740-742]
In proceedings to determine whether the cases of three juveniles charged
    with being delinquent by reason of murder should be transferred to the
    Superior Court pursuant to G. L. c. 119, § 61, the judge was warrant-
    ed in finding that, based upon clear and convincing evidence, the ju-
    veniles presented a significant danger to the public and were not
    amenable to rehabilitation as juveniles.  [742-746]
The requirements of G. L. c. 119, § 61, and the guidelines established by
    this court in A *Juvenile* v. *Commonwealth,* 370 Mass. 272 (1976), pro-
    vide the full procedural protections which must be afforded a juvenile
    before he may be tried as an adult.  [746]

Civil actions commenced in the Supreme Judicial Court
for the county of Suffolk on February 22, 1980, and Febru-
ary 26, 1980, respectively.

The cases were heard by *Abrams, J.*

*Daniel F. Featherston, Jr.,* for one juvenile.

*Franklin H. Levy* for a second juvenile.

*Constance L. Rudnick (Richard A. Gargiulo* with her) for
a third juvenile.

---

[1] A joint petition filed by two juveniles and a separate petition filed by a
third juvenile were consolidated in the Supreme Judicial Court for Suffolk
County.

*Charles J. Hely*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.  This is an appeal from an order of a single justice dismissing petitions for extraordinary relief brought by the petitioners pursuant to G. L. c. 211, § 3. The petitioners, whose cases were ordered transferred from the Juvenile Session, Municipal Court of Brookline, to the Superior Court pursuant to G. L. c. 119, § 61, thus challenge the jurisdiction of the Superior Court to try them as adults.  They contend that interlocutory relief under G. L. c. 211, § 3, is appropriate in such criminal cases for two reasons:  (1) the ordinary appellate procedure following conviction is insufficient protection for the juveniles' substantive rights, which would be irremediably damaged in their public trial as adults, and (2) these cases include a question of proper transfer practice and thus involve the working relation between two departments of the Trial Court (specifically, the proper standard of review by the Superior Court when considering a motion to dismiss in such cases).  The single justice declined to review the evidence presented in the transfer hearing after concluding that interlocutory relief under G. L. c. 211, § 3, was not appropriate in this situation.  We prefer not to examine the appropriateness of relief under G. L. c. 211, § 3, however, since we conclude that the transfer of these juveniles to adult proceedings by a Brookline Municipal Court judge (hereinafter referred to as the judge) was warranted on the evidence before him and complied with the requirements established by both the Legislature and this court.  Since we thus find no occasion for relief, we do not determine whether, if there had been error in the transfer proceeding, this would be an appropriate case in which to exercise our extraordinary powers under G. L. c. 211, § 3, to afford interlocutory relief.  Accordingly, we affirmed the dismissal of the petition by an order issued by the full court on September 18, 1980, and also stated that an opinion or opinions would follow in due course.[2]

---

[2] After the issuance of the full court's order of September 18, 1980, the court was informed that Juvenile A had pleaded guilty to a charge of

On May 19, 1979, complaints were issued pursuant to
G. L. c. 119, §§ 54, 55, in the Juvenile Session of the
Municipal Court of Brookline charging each juvenile with
being a delinquent child by reason of murder. The Com-
monwealth moved to transfer the cases from the Juvenile
Session to the Superior Court, pursuant to G. L. c. 119,
§ 61. At the probable cause determination[3] held on July 5
and 18, 1979, there was testimony as to the following facts.
During the evening of May 18, 1979, Juvenile A (then age
sixteen years, six months), Juvenile B (then age sixteen
years, five months), and Juvenile C (then age fifteen years,
six months) were gathered on a street corner in Brookline
with James Corbett (an adult). There had been some limit-
ed drinking of beer and several earlier confrontations with a
motorcycle police officer. During the evening there was
also a confrontation with some college-age males during
which a knife was exhibited. At 11:30 P.M. an Iranian col-
lege student and a friend were walking down Beacon Street
and were confronted by the three juveniles and Corbett.
The four positioned themselves on the sidewalk so that the
Iranian youths had to walk between them. After some
words were spoken, the taller Iranian youth ran away from
the scene and was chased down the road by Corbett. The
three juveniles then circled the smaller youth (one Ali Ma-

manslaughter and that the district attorney had entered a nolle prosequi
as to the remainder of the indictment charging murder. The other de-
fendants, we were informed, proceeded to trial. Although the Common-
wealth now avers that Juvenile A, by his guilty plea has waived all his
rights in this appeal, we nevertheless issue this opinion as related to all
three petitioners because we have previously entered an order for judg-
ment dismissing the petition in its entirety.

[3] The "transfer hearing" required by G. L. c. 119, § 61, is actually a
two-step determination. The first part is an inquiry into probable cause.
Only if probable cause is found to exist is the second determination —
whether to retain juvenile jurisdiction or to "bind over" the defendant to
the Superior Court — then made. In order to retain the statutory ter-
minology, we refer to the entire process as the "transfer hearing" and to its
two component parts as the "probable cause stage (or determination)"
and the "transfer stage (or determination)." See G. L. c. 119, § 61, and
Rule 208 of the Special Rules of the District Courts.

jidi) and attacked him. Majidi was hit with a metal bar, kicked, and beaten to the ground with fists. While lying on the ground Majidi was repeatedly stabbed with Juvenile A's knife, resulting in three puncture wounds to the front and three to the back. As a result of screams from witnesses the three fled, leaving Majidi on the sidewalk bleeding. A little more than one hour later, Majidi was pronounced dead after being taken to a hospital. The three were subsequently arrested.

Probable cause was found and, on October 31 and November 1, 1979, the second part of the transfer process, the transfer determination, was held before the same judge who had heard the evidence of probable cause. As at the probable cause stage, the juveniles were represented by counsel, and a court reporter was present. Juveniles B and C both testified. Based on this evidence, as well as other evidence pertaining to the background of each juvenile, the judge entered findings of fact and orders to dismiss the juvenile complaints and cause criminal complaints to be issued pursuant to G. L. c. 119, § 61. On November 26, 1979, the grand jury returned indictments as to each defendant on each charge (murder and two related counts of assault and battery by means of a dangerous weapon). The defendants then moved to dismiss in the Superior Court alleging that, since the facts found by the Municipal Court judge failed to meet the standards established by the Legislature and this court, the Superior Court therefore lacked jurisdiction. After reviewing the evidence, a judge of the Superior Court denied the motion to dismiss and entered written findings supporting his order.

The defendants then filed petitions for relief under G. L. c. 211, § 3, in the Supreme Judicial Court for Suffolk County. The petitions were heard by a single justice, who denied relief and dismissed the petitions. A motion for rehearing and reconsideration was denied, and the case is now before us on the petitioners' appeal from the orders of the single justice. We first review the cases and statutes which set forth the minimum findings necessary to support a decision

to transfer such cases. Following this we examine the evidence presented relative to each defendant, and the findings of the Municipal Court judge, all of which lead us to conclude that there has been no error.

1. *Requirements of G. L. c. 119, § 61, and Court Guidelines.*

In order for a juvenile between his fourteenth and seventeenth birthdays to be tried as an adult, it must first be established that the juvenile falls into one of two categories: (1) he must be a child who previously has been committed to the care of the Department of Youth Services and who is now charged with having committed an offense which, if he were an adult, would be punishable by imprisonment in the State prison; or (2) he must be charged with having committed an offense involving the infliction or threat of serious bodily harm. G. L. c. 119, § 61. In order to transfer the child for adult proceedings, not only must at least one of the two preceding conditions have been satisfied but also, of importance here, the judge must enter the following two written findings based upon clear and convincing evidence: (1) the child presents a significant danger to the public (this danger being demonstrated by the nature of the offense and the child's past record of delinquent behavior, if any); and (2) the child is not amenable to rehabilitation as a juvenile. G. L. c. 119, § 61. The judge must also consider at least the five factors denominated (*a*) through (*e*) in G. L. c. 119, § 61,[4] and may find support for the two critical written

---

[4] The statute requires that, if the judge finds probable cause, he "shall then consider, but shall not be limited to, evidence of the following factors: (*a*) the seriousness of the alleged offense; (*b*) the child's family, school and social history, including his court and juvenile delinquency record, if any; (*c*) adequate protection of the public, (*d*) the nature of any past treatment efforts for the child, and (*e*) the likelihood of rehabilitation of the child." G. L. c. 119, § 61, as appearing in St. 1975, c. 840, § 1.

Section 61 authorizes the adoption of court rules for the conduct of transfer hearings. In our earlier cases we spoke of procedures mandated by Rule 85A of the Rules of the District Courts, effective May 7, 1973. See A *Juvenile* v. *Commonwealth,* 370 Mass. 272, 275 n.3 (1976). These requirements have since been changed and are presently found in Rule 208 of the Special Rules of the District Courts of Massachusetts. Rule 208

findings in these or in the similar factors presented in our guidelines. See A Juvenile v. Commonwealth, 370 Mass. 272, 281-283 (1976). Neither the statute nor our cases, however, require the judge to make a written finding concerning any particular one of these individual factors.

Our cases supplement the statutory requirements. A judge who makes the two written findings required by G. L. c. 119, § 61, must also make subsidiary findings indicating the basis for his conclusions concerning the two statutorily required findings. A Juvenile v. Commonwealth, 370 Mass. 272, 282 (1976). These subsidiary findings may show consideration of the five enumerated statutory factors and the factors identified in our guidelines, id. at 282 n.14, although any single factor will rarely, if ever, be controlling. Cf. A Juvenile v. Commonwealth, 370 Mass. 272, 282 (1976).

The petitioners urge us to require written findings covering each enumerated factor the court is directed to consider under G. L. c. 119, § 61. They argue that this will ensure that each area required to be considered will indeed be considered. We decline to adopt such a compulsory "checklist" approach. Even though the statute requires that the two critical findings be written, its only affirmative requirement concerning the enumerated factors is that they be considered. We think that in differentiating between the two critical findings and the five enumerated factors in such a manner the Legislature indicated its concern that courts making transfer determinations have available to them a

---

adds no substantive requirements to the enumerated factors in G. L. c. 119, § 61, and the guidelines in our cases. The sequence of District Court rules on this subject is as follows: rule 85 (effective March 4, 1969); rule 85A (effective May 7, 1973); rule 208 of the Special District Court Rules (effective July 1, 1975); and rule 208 of such rules (amended, effective June 1, 1976), which is the current rule. See also Commonwealth v. A Juvenile, 363 Mass. 640, 641-642 (1973), for the relevant part of former rule 85 and a discussion of former rule 85A, and see Commonwealth v. Clark, 379 Mass. 623, 631-634 (1980), for a comparison of former and current procedures of transfer.

broad range of evidence from a wide variety of sources, the enumerated factors identifying only the minimum evidence which must be considered, if available. This concern is further indicated by the statutory preface "the court shall then consider, but shall not be limited to, evidence of the following factors." G. L. c. 119, § 61, second par.

Our previous cases also reflect this concern. "There is no specific requirement that a judge weigh these factors in a certain manner or achieve some predesigned balance. Any factor which bears on the protection of the public and the amenability of the child to treatment as a juvenile may be considered." *A Juvenile* v. *Commonwealth*, 370 Mass. 272, 282 (1976). "[I]n the relatively few cases in the Juvenile Courts in which the transfer question arises, the proof should be full, and in the still fewer cases where transfer is ordered, the findings should express the judge's reasons in fair detail and with logical cohesion." *A Juvenile* v. *Commonwealth (No. 1)*, 380 Mass. 552, 563 (1980). It may be better practice for a judge to make detailed written findings concerning each enumerated factor, but so long as the transfer order complies in other aspects with our guidelines and the findings meet the statute's "clear and convincing" test, a transfer order is not fatally deficient if it omits factors the judge finds ambiguous, unpersuasive or nonexistent.

2. *The Evidence Presented at Petitioners' Transfer Hearing.*

Having reviewed the proper standards for transfer hearings, we next examine the subsidiary findings identified by the judge. Included in the evidence submitted for each juvenile was a written psychiatric report prepared by an independent doctor who was selected by the Commonwealth, a copy of each juvenile's school records, and a psychiatric report prepared by the Brookline Court Clinic. These documents were considered by the judge as bearing on the minor's potential for successful treatment before the age of majority within existing juvenile facilities. Additionally, for Juveniles B and C, there was submitted for each a full written report as to his family and home life.

There were some findings made by the judge which were common to all three juveniles. The judge gave great weight to the nature of the offense charged, as he was permitted to do under our cases and G. L. c. 119, § 61. See *A Juvenile* v. *Commonwealth*, 370 Mass. 272, 282 (1976). In his written findings the judge found that the rehabilitation resources of the Department of Youth Services would inadequately serve to protect the public both because secure facilities were used only as a last resort and because of the delay involved prior to placing a child in such a facility. The final written findings common to all three juveniles were the two critical findings required by G. L. c. 119, § 61: that, based upon clear and convincing evidence, the juveniles presented a significant danger to the public and were not amenable to rehabilitation as juveniles.

The judge also entered, as to each of the three juveniles, written findings of subsidiary factors upon which these two statutory conclusions were based. The more important findings particular to each of the three are summarized below. As before, we note that the judge was not required to make written findings concerning subsidiary factors he has found to be ambiguous, unpersuasive or nonexistent.

A. *Findings as to Juvenile A.* Juvenile A, concededly the person who repeatedly stabbed the victim, exhibited no remorse after the homicide. Two weeks before the second part of the transfer hearing, he was again arrested and charged with an assault by means of a dangerous weapon in an incident subsequent to and unrelated to the homicide. He had been suspended from school in 1978 for painting racial epithets on the school walls. As a result of this incident, he was ordered to make restitution to the school and attend counseling, but he did not fully comply with these requirements. As well as suffering from significant learning disabilities, Juvenile A also had a problem with alcohol abuse. Not only was he involved in the murder of Majidi and aggressive confrontations with others on the night of the murder, but he had also been involved in other incidents of malicious damage and altercations which did not result

in criminal prosecution. The court made further findings in addition to those here listed.

B. *Findings as to Juvenile B.* The judge found that there was appreciable domestic violence in Juvenile B's home. His father was incarcerated at the time of the hearing, and his mother had previous psychiatric problems. There had been incidents of aggressive behavior in which Juvenile B was involved, and he was also a drug and alcohol abuser. Prior to the time of the homicide, he had been arrested for assault and battery, breaking and entering with intent to commit a felony, larceny, and malicious injury to personal property. While on probation for a charge of malicious destruction, he was again before the court for a charge of breaking glass. He was found not to have responded to any rehabilitation he had been offered. Juvenile B was found to be the assailant who had used the metal bar in the homicide.

C. *Findings as to Juvenile C.* Juvenile C was found not to have exhibited any appreciable remorse by word, act or expression. Subsequent to the homicide, and within a few days of the transfer determination, he was caught writing on the walls of his former high school. From the time he was in seventh grade, he had been suspended three times, once for fighting. His school performance was found to have significantly deteriorated.

Juvenile C was found to have been the instigator of altercations with other young people prior to the homicide. He had previously rejected all counseling and therapy, despite recommendations that he accept assistance. Not only was he found to have a proclivity to violence but also to have a strong antipathy to minorities. He was heavily involved in self-defense training and interested in military weaponry. His character structure was found to exhibit "anxiety, rigidity and an interest in aggression."

For each juvenile two written psychiatric reports were submitted prior to the hearing. Of the six reports, three expressly recommended against transfer, and three impliedly so recommended. In a brief finding the court identified

each of these reports as "inconclusive." The petitioners emphasize this finding as illustrative of the judge's unwillingness to entertain favorable evidence. We read the use of the word "inconclusive" as signifying the judge's proper hesitancy to accept these reports (or indeed any particular evidence) as conclusive when considered with all of the other evidence. Cf. *American Hoechest Corp.* v. *Department of Pub. Utils.*, 379 Mass. 408, 412-413 (1980). It is just this sort of literal hypertechnicality that we wish to avoid in construing the requirements of G. L. c. 119, § 61, since the transfer process is already carefully circumscribed by the guidelines established in the statute and our cases.

We disagree with the petitioners' contention that the transfer was "arbitrary and capricious" because unsupported by sufficient evidence. While we perhaps might have reached different conclusions from those of the judge, we are unable to say that no reasonable judge making this difficult determination could have found the evidence sufficient to meet the clear and convincing standard mandated by G. L. c. 119, § 61. Further, the findings express the judge's reasons "in fair detail and with logical cohesion" as we have required. *A Juvenile* v. *Commonwealth (No. 1)*, 380 Mass. 552, 563 (1980). As we have indicated above, it would have been better if the judge had made findings as to each of the five statutory factors, even if some of those findings indicated the inconclusiveness or nonexistence of some of the factors. Those findings would show beyond question the judge's compliance with statutory requirements. Nevertheless, there is nothing in this record, including the judge's findings, to support the petitioners' premise that the judge did not comply with the mandates of the statutes or of this court. On the contrary, the record as a whole gives strong support to our conclusion that the judge gave full and fair consideration to the issues and fully complied with all requirements. There was no error.

The suggestion is made that the petitioners were denied their rights to procedural due process. Since we have decided that the requirements of G. L. c. 119, § 61, and the

guidelines established by this court have been satisfied, we now determine whether those requirements afford the petitioners sufficient protection. A related question was addressed by the First Circuit Court of Appeals in *Stokes* v. *Fair,* 581 F.2d 287 (1st Cir. 1978). In *Stokes,* the plaintiff challenged his transfer for trial as an adult under G. L. c. 119, § 61, stating that since he had not been provided with a statement of reasons for this transfer, his due process rights had been violated. We note that at the time of his hearing (1969), G. L. c. 119, § 61, did not require consideration of the factors enumerated (*a*) through (*e*) in the present version, nor was such consideration required under Rule 85 of the Rules of District Courts. See *Stokes* v. *Commwealth,* 368 Mass. 754, 775 (1975).

Analyzing the requirements of such a transfer hearing, in terms of due process, the First Circuit stated that "the procedural protections which must be afforded a juvenile before he may be transferred to adult offender status vary in terms of the particular statutory scheme which entitles him to juvenile status in the first place. . . . While we readily agree that in most cases in which review is possible the preferred procedure would be for the court to state the reasons for its decision and in some cases such a statement of reasons may be essential to due process, we cannot say that the appellee's constitutional rights were violated here." *Stokes* v. *Fair,* 581 F.2d 287, 289-290 (1978). The Court of Appeals suggested that two areas of concern were to be examined in resolving such a due process challenge: (1) ensuring that the juvenile is adequately informed of the basis upon which the court was ordering transfer, and (2) providing a record which would enable a reviewing court to evaluate the transfer proceedings. *Id.* at 291. We have no disagreement with these statements of principle. The additional procedures now required by G. L. c. 119, § 61, and our guidelines fully satisfy both of these criteria. We think that the protection afforded by G. L. c. 119, § 61, and our guidelines fully provide all the "formal mechanisms" to which the petitioners were entitled in order to protect their due process rights. See *id.* at 289.

Finally, we note the petitioners' contention that these petitions are properly considered under G. L. c. 211, § 3, both in order to protect rights of minors which would be irremediably damaged by a public trial and in order to resolve a question of proper transfer practice involving the working relation between two departments of the Trial Court.[5] Since there is no error in the transfer process, there is thus no need to determine whether this case presents a proper occasion for relief under G. L. c. 211, § 3, in order to protect substantive rights of minors. The urgency of resolving the question concerning the relation between two departments of the Trial Court has since subsided with our recent decision of *A Juvenile* v. *Commonwealth (No. 1)*, 380 Mass. 552, 556-558 (1980). Therefore, finding no occasion for relief for these particular petitioners and no need to address the more generalized inquiry concerning the trial courts, we affirmed, by an order issued by the full court on September 18, 1980, the decision of the single justice dismissing the petitions.

---

[5] Although a finding of probable cause is a necessary predicate to a transfer determination, neither of the two proffered grounds for decision under G. L. c. 211, § 3, is involved in our reviewing a determination of probable cause. We therefore find it unnecessary to consider Juvenile C's challenge to the finding of probable cause to believe that he committed murder.