COMMONWEALTH *vs.* NAPIER TRAYLOR.

No. 90-P-44.

Suffolk. October 5, 1990. - December 4, 1990.

Present: KASS, KAPLAN, & JACOBS, JJ.

*Delinquent Child. Jurisdiction*, Delinquent child, Transfer hearing. *Practice, Criminal*, Transfer hearing, Findings by judge. *Witness*, Expert.

At a transfer hearing pursuant to G. L. c. 119, § 61, to determine whether a seventeen year old juvenile charged as a delinquent child by reason of having committed first degree murder should be tried as an adult, the judge was warranted in finding that, notwithstanding the legislative preference for treatment of youthful offenders in the juvenile justice system and the opinions of experts that the defendant would benefit from treatment in the juvenile system but based upon other clear and convincing evidence in the record, the defendant presented a significant danger to the public and was not amenable to rehabilitation as a juvenile. [586-591]

INDICTMENT found and returned in the Superior Court Department on September 17, 1987, following a transfer hearing in the West Roxbury Division of the District Court Department before *Charles J. Artesani*, J.

A motion to dismiss the indictment was heard by *Cortland A. Mathers*, J., and the case was reported by him to the Appeals Court.

*Mary Ann Driscoll* for the defendant.

*Jane A. Donohue*, Assistant District Attorney, for the Commonwealth.

KASS, J. When they began to fight, neither the defendant nor the victim was armed. During a suspension of their battle, the defendant walked over to a duffel bag he had deposited nearby, pulled out a long knife, plunged it into the chest of the surprised victim (whose attention had been diverted by shouts from an upstairs window) and killed him. At the time of the incident, the defendant was sixteen years old. He was

charged as a delinquent child by reason of having committed first degree murder. See G. L. c. 119, §§ 52, 54.

The Commonwealth moved under G. L. c. 119, § 61, as appearing in St. 1975, c. 840, § 1, that the juvenile complaint be dismissed, that the defendant be charged as an adult, and that he be bound over to the Superior Court. A judge of the District Court conducted a "transfer hearing," as required under § 61, and determined that the defendant should be tried as an adult. Subsequently, a grand jury returned indictments for manslaughter and assault by means of a dangerous weapon against the defendant.

In the Superior Court, the defendant attacked the transfer to the adult system as unsupported by the psychiatric evidence and moved to dismiss the indictments. A judge of the Superior Court denied the motion but reported the case to us under Mass.R.Crim.P. 34, 378 Mass. 905 (1979), putting the question whether it was error to order the defendant transferred to the Superior Court to be tried as an adult in light of "the pronounced legislative intent favoring noncriminal treatment of juveniles and the unequivocal position of the McLean [Hospital] experts favoring this defendant's susceptibility to treatment within the juvenile justice system."

Since *A Juvenile* v. *Commonwealth*, 370 Mass. 272, 280-283 (1976), in which the guidelines for transfer hearings were set out, a series of cases have explicated the criteria for deciding whether a child[1] should be transferred out of the juvenile justice system and have discussed the nature of the subsidiary findings and ultimate findings on which a decision should rest. Those cases had explicit statutory requirements on which to build. Section 61 of G. L. c. 119, prescribes that transfer to the adult system shall be based on a written finding supported by clear and convincing evidence 1) that "the child presents a significant danger to the public as demonstrated by the nature of the offense charged and the

---

[1]For these purposes "child" is a term of art. Within the meaning of G. L. c. 119, § 61, it is a person between her or his fourteenth and seventeenth birthdays. The defendant was sixteen on February 27, 1987, when the alleged offense was committed.

child's past record of delinquent behavior," and 2) that the child "is not amenable to rehabilitation as a juvenile." The findings should "express the judge's reasons in fair detail and with logical cohesion." *A Juvenile* v. *Commonwealth (No.1)*, 380 Mass. 552, 563 (1980). Full findings are obviously preferable, but an appellate court will make do if there is a sufficient record on appeal to evaluate the transfer proceedings. *Two Juveniles* v. *Commonwealth*, 381 Mass. 736, 746 (1980).

It is not appropriate to base a transfer decision on the seriousness of the offense alone or on the fact that the child has compiled a considerable record of criminal and asocial conduct. If rehabilitation is a plausible prospect, the youth stays in the juvenile system. *Commonwealth* v. *A Juvenile*, 10 Mass. App. Ct. 385, 392-394 (1980). But if real danger to the public is indicated, as suggested, for example, by a pattern of hostility to, and rejection of, previous rehabilitative efforts, there is a basis for transfer to adult status. *Commonwealth* v. *King*, 17 Mass. App. Ct. 602, 603-605 (1984). On review, it bears remembering that the trial court judge is entrusted, within the statutory framework, with considerable discretion in making the determination whether an accused should be treated as an adult. *Commonwealth* v. *Costello*, 392 Mass. 393, 396 (1984).

1. *Adequacy of findings.* Under G. L. c. 119, § 61, transfer proceedings have two components, generally, as here, the subject of separate hearings. The first component, referred to as the Part A hearing, determines whether probable cause exists to believe the child has committed the offense. Part B considers seriousness of the offense, the child's social and criminal history, adequate protection of the public, past treatment efforts for the child, and the rehabilitative prospects. The appeal in this case is wholly directed to Part B; it claims that the findings fall far short of fair detail and logical cohesion, and that uncontested psychiatric testimony required a determination that the defendant was amenable to rehabilitation.

Indeed, the findings are far from a model. They suffer the weakness of reciting evidence and abruptly concluding that "the child presents a significant danger to the public as demonstrated by the nature of the offense charged and the child's past record of delinquent behavior." That parrots the statute. The judge then proceeds to declare, "The child is not amenable to rehabilitation as a juvenile and for the following reasons," and recites verbatim the factors set out in § 61 for consideration in the Part B hearing.

Inartistic as his findings are, however, we are able to deduce what the judge found. Cf. *Paone* v. *Gerrig*, 362 Mass. 757, 758-760 (1973); *Bruno* v. *Bruno*, 384 Mass. 31, 35-36 (1981); *McMahon* v. *McMahon*, 1 Mass. App. Ct. 647, 648 (1973). The evidence recited by the judge is taken entirely from a memorandum supplied to him by the government. That adoption went beyond tracking. It is apparent from comparing the typography of all but the first and last pages of the judge's findings with the government's memorandum that he photocopied pages of the memorandum and incorporated them in his findings. We infer from his doing so that the judge regarded the testimony summarized by the government with approval, that he regarded it as true, and that he found as facts statements made about the defendant by a probation officer, a school adjustment counselor, the director of the Malden Outreach Program, a special education teacher at Jamaica Plain High School, and a unit director at the Charlestown secure detention facility. All had worked with the defendant.

What emerges is the picture of a youth of limited intelligence with a hitherto incurable predisposition to crime, who resorts to violence on slight provocation. As the defendant insouciantly said to an examining psychiatrist, "Little things get me mad."

The defendant committed an assault sufficiently severe to attract the notice of criminal justice authorities at age eleven. During his twelfth year he was charged with assault and criminal trespass and, separately, with burglary and larceny. At age fourteen, he was charged again with burglary

and larceny, was found delinquent by reason of an assault and battery on a police officer, and five months after that incident, was found delinquent by reason of another assault and battery. When he was sixteen the defendant was charged with stealing a motor vehicle. Later during his sixteenth year, he escalated to armed robbery and carrying a dangerous weapon. There were also episodes of malicious destruction of property and pouring gasoline into an "infernal machine."

All this time the authorities were not idle. The defendant's mother could not handle him and he was placed with a maternal aunt in New Haven, Connecticut. The arrangement was short-lived. The defendant bounced back to the Boston area within, less than two months because of behavior problems. Then there were efforts at vocational placements with home tutorial and small classes. A variety of special education and placement situations, including highly structured programs in secure treatment facilities, were unsuccessful. Disruptive and violent behavior on the part of the defendant resulted in the termination of these attempts. After the killing, the defendant was placed in a secure treatment facility in which he was described as combative and disruptive on ten to fifteen occasions.

On the basis of the information we have recounted, in much abridged form, the judge could well have formed a bleak view about the defendant's potential for rehabilitation.

2. *The psychiatric and psychological evaluations.* The Superior Court judge before whom the deficiency of the transfer proceedings was raised recognized the ragged quality of the District Court judge's findings. He remanded the case to the District Court so that the District Court judge might explain his views about written opinions of a psychiatrist, Dr. Hardman, and a psychologist, Dr. Weiner, who both had expressed themselves to the effect that the defendant would benefit from treatment in the juvenile system. The District Court judge replied with a letter that, "Before making a final disposition in above case all evidence and testimony regarding this case was reviewed by myself including material in

question [*sic*] psychiatric report dated April 23, 1987 from McL[ea]n Hospital."

This was a perfunctory, unsatisfactory response. One would have wished for some explanation by the District Court judge about why he had not been persuaded by the recommendations that the defendant be held for further treatment. The judge did not, however, leave doubt that he had read the evaluations of the experts, had considered the recommendations, and had rejected them. A judge considering a transfer order is no more bound by unanimous expert opinion than would be a finder of fact (judge or jury) on the issue of mental capacity to commit a crime. The cases do not regard expert opinion on mental status, even though uncontradicted, as conclusive. See *Commonwealth v. Smith*, 357 Mass. 168, 178-179 (1970); *Commonwealth v. Lunde*, 390 Mass. 42, 47 (1983); *Commonwealth v. DeMinico*, 408 Mass. 230, 235 (1990). Cf. *Commonwealth v. Costello*, 392 Mass. at 397 (Commonwealth not required to produce expert psychiatric opinion that defendant was *not* amenable to rehabilitation). In assessing prospects for responding to treatment, the case for allowing the judge to make a decision free from any binding effect of therapists' expert opinions is even more compelling. From the vantage of the psychologist or psychiatrist, any subject, save for the irremediably psychotic, should benefit from mental health treatment if the right resources are harnessed. The judge is charged by the statute (§ 61) with balancing the interests of the youth offender and public safety and weighing a child's past history as a factor in the rehabilitative prognosis. Compare the analogous function in giving prognostic weight to a pattern of conduct in the case of judging parental fitness, e.g., *Adoption of Diane*, 400 Mass. 196, 204 (1987).

In the case of the psychiatric evaluation made by Dr. Hardman, the rehabilitative prospects were, in any event, most tentatively expressed. After recounting that the defendant's family "has had a lengthy history of involvement with protective service agencies," Dr. Hardman observed that the defendant "presents as a youth who experienced much emo-

tional neglect in his environment as well as sexual and possibly physical abuse. This deprivation as well as his limited intelligence has not allowed for his development of appropriate ego skills, and he is easily overwhelmed by strong emotions." The defendant, Dr. Hardman continues, "appears to be a youth who could benefit from treatment within the juvenile system." Yet the defendant was already seventeen. He would normally be released from the juvenile system within a year,[2] and the court may take into account the limited opportunity for rehabilitation in so short a time. *Commonwealth* v. *Matthews*, 406 Mass. 380, 387 (1990). See *Commonwealth* v. *King*, 17 Mass. App. Ct. at 603-604.

Dr. Weiner, the evaluating psychologist, voiced his opinion that the defendant's "emotional disturbance be considered the primary target for intervention. [The defendant's] impulsivity and his potential for aggressive behavior stem from an extremely traumatized personality which is more in need of mental health services in a humane, high structured setting than of adult correctional techniques. Therefore, I strongly

---

[2]Under G. L. c. 119, § 58, persons are released from the juvenile system at age eighteen. See also G. L. c. 120, § 16. The Department of Youth Services (DYS) may, under G. L. c. 120, § 17, as appearing in St. 1948, c. 310, § 22, petition to retain custody beyond age eighteen if, because of his "mental or physical deficiency, disorder or abnormality" discharge of the youth constitutes a physical danger to the public. See *D'Urbano* v. *Commonwealth*, 345 Mass. 466, 474-475 (1963); *A Juvenile* v. *Commonwealth*, 370 Mass. 272, 281 (1976). Proceedings under § 17, however, must be initiated at least ninety days before the "child" is due to be released. In the case of Traylor, therefore, who was well into his seventeenth year, DYS would have been obliged to petition for his extended commitment almost as soon as he arrived. The § 17 proceedings, because they involve continued custody, are heavily burdened. The government is obliged to prove mental or physical disorder, deficiency, or abnormality beyond a reasonable doubt. *Department of Youth Servs.* v. *A Juvenile*, 384 Mass. 784, 791-793 (1981). Psychiatric evaluations may not be introduced unless the child, when interviewed, is warned that the results of the interview may be used against him. *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 521-527 (1986). If an extended commitment decision is made, it may be appealed to a jury-of-six session. All in all, a judge sitting on a transfer petition could hardly take extended commitment for granted, and, indeed, as the court observed in *Commonwealth* v. *Matthews*, 406 Mass. 380, 387 (1990), the transfer statute requires the judge to concentrate on the minor's potential for rehabilitation before age eighteen.

recommend that [the defendant] be retained and treated in the juvenile justice system." The psychologist's doubt that any good would come from adult correctional techniques is unassailable. The judge, however, was obliged to consider the likelihood of rehabilitative success and the public safety implications of failure in treatment. The facts as recounted by the experts and the balance of the record warranted the judge's ultimate finding that the defendant was not amenable to rehabilitation.

Our answer to the reported question is that, notwithstanding the legislative preference for treatment of youthful offenders in the juvenile system and the opinions of the experts from McLean Hospital, it was not error on the part of the District Court judge to order the transfer of the defendant to the Superior Court to be tried as an adult. The order that the defendant is to be tried as an adult is affirmed and the case is remanded to the Superior Court where the defendant shall stand trial.

*So ordered.*