# United States Court of Appeals
## For the First Circuit

No. 05-2567

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID CADIEUX,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Circuit Judge,

Campbell, Senior Circuit Judge,

and Saris,* District Judge.

Jane Elizabeth Lee, for appellant.
    Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

August 21, 2007

_____

*Of the District of Massachusetts, sitting by designation.

**SARIS, District Judge.**

Appellant David Cadieux was convicted as a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and sentenced to 188 months under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). On appeal, he contends that (1) the trial court's admission of a recording of a 911 call made by a declarant whom Appellant did not have the opportunity to cross-examine violated the Confrontation Clause; and (2) the trial court improperly classified Appellant's 1989 conviction for indecent assault and battery on a child under fourteen, Mass. Gen. Laws ch. 265, § 13B (1989), as a violent felony under the ACCA because his conviction was for a state-law crime that covered both violent and non-violent conduct.

## I. Background[1]

### A. The 911 Call for Help

On May 15, 2003, the police responded to a 911 call reporting that a drunken Cadieux was brandishing a shotgun during an argument with his long-time girlfriend, Theresa Nye, at his home in rural Maine. A convicted felon since the 1980s, Cadieux lived on the property with Nye and her children. When Nye returned home from work around 9 p.m., she found Cadieux in the barn drunk and angry, apparently having been kicked by a horse. They argued, and

---

[1]The government introduced evidence of these facts at trial. For purposes of this appeal, these facts are undisputed.

eventually Nye asked Cadieux to leave.  During this exchange, Cadieux picked up a shotgun lying nearby in the barn.  At this time, Jolene Nye, Theresa's twenty-one-year-old daughter, arrived home with her boyfriend and child.  Theresa told Jolene not to get involved in the argument and to go into the house because there were guns in the barn.  Hysterical, Jolene entered the house and called the police.  As she spoke with the dispatcher, her mother tried to persuade her to hang up the phone.

Jolene had the following exchange with the dispatcher:

**Police:**  911
**[Jolene]:** Um, I have, I don't care Mom, he's
**Police:**  Hi, hello
**[Jolene]:** Hello
**Police:**  Talk with me, try to calm down, what's going on? Hi
**[Jolene]:** Um
**Police:**  You're on the Maxwell Road in Temple
**[Jolene]:** Yup
**Police:**  What's the problem?  What's going on, do you want a police officer?
**[Jolene]:** Um, yeah, because
**Police:**  Yup, Maxwell Road, Temple
**Mom:**    No
**[Jolene]:** Mom, yes, think about your kids right now Mom
**Police:**  What's your Mom's name?
**[Jolene]:** I don't care if there's no ammunition Mom he just grabbed the gun cuz he's shitfaced.
**Police:**  Hey,
**[Jolene]:** Uh-huh
**Police:**  Who grabbed the gun?
**[Jolene]:** (breathing)
**Police:**  Who's got a gun you gotta tell me now.
**[Jolene]:** It's not loaded it was out in the barn
**Police:**  Who?
**[Jolene]:** Hello?
**Police:**  Hi, how old is he?
**[Jolene]:** Um

3

```
Police:    Who's in the barn with the gun?
[Jolene]:  My mom's
Police:    boyfriend?
[Jolene]:  Yeah
Police:    Franklin Unit 76, 1032
[Jolene]:  We've never had a problem like this
Police:    It's gonna be Maxwell Road, 25 Maxwell Road,
           a male subject; the female caller does not
           believe there are any bullets in the gun
[Jolene]:  No there is, there isn't any, he's drunk.  I
           just said that Mom
Police:    ___ start toward Temple (background police
           noise) Temple, Unit 8 could you head for 25
           Maxwell Road Temple, thank you.
[Jolene]:  I'm not sure I think he might have left.  But
           there was there was (talking to Mom in
           background)
Police:    (Background police noise) Is it the first
           house on the right? Is it the first house on
           the right?
[Jolene]:  Huh?
Police:    Are you the first house on the right?
[Jolene]:  I think the second, my mom wants to talk to
           you.
```

She then handed the phone to her mother.  At some point, Cadieux fled into the nearby woods.

When the police arrived, they set up a tactical team around the perimeter of the house and searched for Cadieux.  He was discovered hours later, around midnight, as he attempted to enter the barn through a locked rear door.  The police found the shotgun, which was missing a clip, and an antique rifle[2] stuffed into a crawlspace underneath the barn's foundation.  The police also found a shotgun shell in the barn near where the horses were kept.  A

---

[2]As an antique, the rifle is not a "firearm" under 18 U.S.C. § 922(g).

4

search the next day revealed the missing shotgun clip in a vest hanging in the barn close to many of Cadieux's possessions.

Cadieux was arrested for being a felon in possession of a firearm. When he was taken into custody, Cadieux insisted that he had a firearm identification card issued in Massachusetts and could have guns on his property if he wanted.

**B.  The Failed Plea Agreement and Trial**

On July 19, 2004, Cadieux entered into a plea agreement under Fed. R. Crim. P. 11(c)(1)(c). The agreement specified a base offense level 14 and criminal history category II, which resulted in an initial guidelines range of 12-18 months. At the change-of-plea hearing on September 2, 2004, probation informed the court that Cadieux was subject to a sentencing enhancement as an armed career criminal because Cadieux had three prior violent felony convictions. See 18 U.S.C. § 924(e)(1). Among other things, he argued that his 1989 conviction for indecent assault and battery on a minor did not qualify as a third strike because the 1989 statute captured consensual sexual touching that could not be deemed "violent" within the meaning of the ACCA. The presentence report, to which Cadieux did not object, stated that Cadieux was born on September 20, 1959. In a well-reasoned opinion, the court below found that "a comparison between the [1989] indictment and the elements of the statute as illuminated by applicable case law" established that Cadieux, as an adult, had committed an indecent

5

sexual touching of a child which, under our precedent, was a violent felony under the ACCA. See United States v. Cadieux, 350 F. Supp. 2d 275, 285 (D. Me. 2004).[3] The court permitted Cadieux to withdraw his plea, and the case went to trial.

At trial, over Cadieux's objection, the district court allowed the government to introduce a recording of Jolene's statements to the 911 dispatcher. Jolene did not testify. The court concluded that the recording was admissible either as a business or public record; that the statements themselves, though hearsay, could be introduced either as excited utterances or present sense impressions; and that the statements were nontestimonial and therefore exempt from Confrontation Clause challenge.

After a two-day trial, Cadieux was convicted on one count of being a felon-in-possession of a firearm. The court subsequently imposed a sentence of 188 months incarceration, the minimum term applicable under the ACCA. See 18 U.S.C. § 924(e). This appeal followed.

## II. Discussion

### A. Confrontation Clause

Appellant first challenges the admission of the

---

[3]Although Cadieux's age at the time of the crime was undisputed, the court did not consider it, despite the fact that it struck the court "as equally artificial not to do so." Cadieux, 350 F. Supp. 2d at 285 n.14.

statements to the 911 operator.  In Crawford v. Washington, the Supreme Court held that the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."  541 U.S. 36, 53-54 (2004).  Appellant objects to the district court's classification of Jolene Nye's statements as nontestimonial.

We review "de novo the question of whether or not a given statement, in context, should be deemed testimonial."  United States v. Brito, 427 F.3d 53, 59 (1st Cir. 2005).  In Crawford, the Court "offered no precise definition of which statements were to be regarded as testimonial and which were not."  Brito, 427 F.3d at 59.  Instead, the Court set out, "for illustrative purposes, a trio of formulations that [comes] within the 'core class' of testimonial statements."  Id. (quoting Crawford, 541 U.S. at 59).

> The first formulation encompasses "ex parte in-court testimony or its functional equivalent -- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially."  The second encompasses "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions."  The third encompasses "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

Id. (quoting Crawford, 541 U.S. at 50-52).

The Supreme Court has clarified the circumstances under

7

which the admission of a 911 recording of an absent witness will offend the Sixth Amendment. See Davis v. Washington, __ U.S. __, 126 S. Ct. 2266, 2273-74 (2006). The Davis Court held that statements made to a 911 operator "are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Id. (emphasis added). By contrast, such statements are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id.

The Davis Court identified several factors that should guide courts in this objective inquiry, including:

> (1) Was the declarant speaking about current events as they were actually happening, "requiring police assistance" rather than describing past events?
>
> (2) Would a "reasonable listener" conclude that the declarant was facing an ongoing emergency that called for help?
>
> (3) Was the nature of what was asked and answered during the course of a 911 call such that, "viewed objectively, the elicited statements were necessary to be able to resolve the present emergency" rather than "simply to learn . . . what had happened in the past?"
>
> (4) What was the "level of formality" of the interview? For example, was the caller frantic, in an environment that was neither tranquil nor safe?

See id. at 2276-77 (emphasis in original).

8

Under the Davis guideposts, the statements recorded during the 911 call are nontestimonial hearsay. The daughter is speaking about events in real time, as she witnessed them transpire through a window in her home; at no point is there a description of past events. She specifically requests police assistance. The dispatcher's questions are tailored to identify the location of the emergency, its nature, and perpetrator. Finally, Jolene Nye is hysterical as she speaks to the dispatcher, in an environment that is neither tranquil nor, as far as the dispatcher could reasonably tell, safe. The exchange was not part of a formal police interrogation designed to elicit statements for the purpose of a later prosecution. The emergency did not end until Cadieux was apprehended, hours after Jolene Nye spoke to the dispatcher.

Nonetheless, Appellant insists Jolene was quite aware that her statements would be recorded by the police and used for a prosecutorial purpose because of her mother's pleas to hang up so that Cadieux would not get into trouble. Therefore, in Appellant's view, her statements fall within the "core class" of testimonial statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 52. This argument is unavailing. The Court in Davis specifically directs courts to examine the nature of both "what was asked and answered." 126 S. Ct. at 2274. The dispatcher's questions were made with the

9

object of procuring information relevant to providing emergency police assistance. Jolene's statements, though at times muddled by her mother's interventions, were similarly directed towards that end. "Ordinarily, statements made to the police while the declarant or others are still in personal danger cannot be said to have been made with consideration of their legal ramifications." Brito, 427 F.3d at 62. Theresa Nye's desire not to involve the police does not alter the fact that Jolene's call was plainly a call for help, relating to events transpiring in real time, while danger was still present. As such, in the totality of the circumstances, they were nontestimonial. The district court's admission of the 911 call is affirmed.

**B. Sentencing**

Appellant contends that the court erred when it classified his 1989 conviction for indecent assault and battery on a child under fourteen as a "violent felony" under the ACCA. Whether a crime constitutes a "violent felony" under the ACCA is a question of law, reviewed de novo. United States v. Sacko, 178 F.3d 1, 3 (1st Cir. 1999).

The ACCA provides that anyone convicted as a felon in possession of a firearm is subject to a term of incarceration for "not less than fifteen years" if he has three prior convictions for a "violent felony." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as any crime punishable by imprisonment for more

10

than one year which

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another</u>.

<u>Id.</u> § 924(e)(2) (emphasis added). Appellant concedes that he has two prior convictions that qualify as violent felonies within the meaning of the statute. The question presented here is whether his 1989 conviction falls within the ACCA's residual provision for crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another."

1. The *Taylor-Shepard-James* Trilogy

The Supreme Court has undertaken the difficult task of determining whether a prior conviction under state law constitutes a violent felony under the ACCA in a trilogy of cases beginning with <u>United States</u> v. <u>Taylor</u>, 495 U.S. 575 (1990). In <u>Taylor</u>, the Supreme Court instructed sentencing courts to take a "categorical approach," which generally looks "only to the fact of conviction and the statutory definition of the prior offense." <u>Id.</u> at 602. In order to impose an ACCA enhancement based on a defendant's prior conviction under state law for burglary under clause (ii), a sentencing court must refer to the statutory elements of the prior offense to ensure that the defendant was in fact convicted of "generic" burglary -- that is, the "unlawful or unprivileged entry

11

into, or remaining in, a building or structure, with intent to commit a crime."  Id. at 599.  Where the state law definition of burglary was broader than the generic offense, under a so-called "nongeneric" burglary statute, the "categorical approach" permits the court to examine the record of conviction to determine whether "a jury was actually required to find all the elements of generic burglary."  Id. at 602.  The Court explained,

> For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

Id.  We have called this a two-tiered categorical approach.  United States v. Miller, 478 F.3d 48, 50 (1st Cir. 2007).

In Shepard v. United States, 544 U.S. 13, 25 (2005), the Supreme Court addressed this categorical approach in the context of a prior guilty plea to an offense under a nongeneric burglary statute, holding that an inquiry

> under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

Id. at 26.  The Court, however, rejected the use of a police report as a basis for judicial fact-finding because permitting a sentencing judge considering an ACCA enhancement to make a

12

"disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea" raises Sixth and Fourteenth Amendment concerns.  Id. at 25-26.

Recently, the Supreme Court again used the categorical approach to determine whether an offense qualifies as a violent felony under the ACCA's residual clause.  In James v. United States, 550 U.S. __, 127 S. Ct. 1586, 1594 (2007), the Court considered whether Florida's attempted burglary statute presented a sufficient "potential risk of injury" to qualify as a violent felony within the meaning of the ACCA's residual provision.  In so doing, the Court stated that the specific offenses enumerated in Section 924(e)(2)(ii) "provide one baseline from which to measure whether other similar conduct 'otherwise . . . presents a serious potential risk of physical injury."  Id. at 1594.  The Court found that the risk posed by attempted burglary under Florida law -- like that posed by its closest clause (ii) analogue, completed burglary -- arises from

> the possibility of a face-to-face confrontation between the burglar and a third party -- whether an occupant, a police officer, or a bystander -- who comes to investigate.  That is, the risk arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress.

Id. at 1594-95 (citing United States v. Payne, 966 F.2d 4, 8 (1st Cir. 1992)).  Indeed, the Court reasoned, third-party "encounters may occur much more frequently during attempted burglaries [than

the completed sort] because it is precisely due to such encounters that many planned burglaries do not progress beyond the attempt stage." Id. at 1599. Thus, because attempted burglary under Florida law "presented at least as much risk" as completed burglary, the Court concluded that it qualified as a violent felony under the residual clause. Id. at 1598.

The Supreme Court articulated the categorical approach as follows: "[W]e consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of th[e] particular offender." Id. at 1594 (emphasis in original). The Court clarified that the residual clause does not require "that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." Id. at 1597 (citing Gonzales v. Duenas-Alvarez, 549 U.S. __, 127 S. Ct. 815, 822 (2007)).

> Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another. . . . As long as an offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of § 924(e)(2)(B)(ii)'s residual provision.

Id. (emphasis added).

The Supreme Court recognized the difficulty of assessing risk for the full range of state-law crimes. See id. at 1598 n.5

14

(acknowledging that the "ACCA requires judges to make sometimes difficult evaluations of the risks posed by different offenses"). For example, it refers to an escape crime. See id. at 1599 ("Without hard statistics . . . how is a lower court to determine whether the risk posed by generic burglary is greater or less than the risk posed by an entirely unrelated unenumerated offense -- say, escape from prison?"); see generally United States v. Davis, 2007 U.S. App. LEXIS 11549, *8-9 (5th Cir. May 17, 2007) (recognizing that the enumerated offenses in clause (ii) "merely provide a starting point in the inquiry of whether there is a serious risk for physical injury").

2. The State Law Conviction

Turning to Appellant's 1989 conviction, we begin with the elements of the offense. Appellant was convicted under a statute that prohibited indecent assault and battery on a child under fourteen.[4] See Mass. Gen. Laws ch. 265, § 13B (1989) ("Section 13B"). As one Massachusetts court has explained,

---

[4]Pertinently, Section 13B reads:

Whoever commits an indecent assault and battery on a child under the age of fourteen shall be punished by imprisonment in the state prison for not more than ten years, or by imprisonment in a jail or house of correction for not more than two and one-half years....

In a prosecution under this section, a child under the age of fourteen years shall be deemed incapable of consenting to any conduct of the defendant for which said defendant is being prosecuted.

15

> An indecent assault and battery is essentially an act or series of acts which are fundamentally offensive to contemporary moral values. It is behavior which the common sense of society would regard as immodest, immoral and improper. Thus, in order to prove indecent assault and battery, the Commonwealth must prove beyond a reasonable doubt that the defendant committed an intentional, unprivileged and indecent touching of the victim. It has been held that the intentional, unjustified touching of private areas such as the breasts, abdomen, buttocks, thighs, and pubic area of a female constitutes an indecent assault and battery.

Commonwealth v. Mosby, 30 Mass. App. Ct. 181, 567 N.E.2d 939, 941 (Mass. App. Ct. 1991) (alterations, internal citations, and quotation marks omitted); see, e.g., Commonwealth v. Taylor, 50 Mass. App. Ct. 901, 733 N.E.2d 584, 584 (Mass. App. Ct. 2000).

On several prior occasions, we have addressed whether inappropriate sexual touching is a crime that presents a serious potential risk of physical injury to another. In United States v. Leahy, we held that Mass. Gen. Laws ch. 265, § 13H, which criminalizes indecent assault and battery on a person over fourteen, was a violent felony for ACCA purposes. 473 F.3d 401, 411 (1st Cir. 2007). While helpful, Leahy is not dispositive because Section 13H, unlike Section 13B, includes lack of the victim's consent as an element. The Second Circuit, in Sutherland v. Reno, found this element (i.e., lack of consent) to be determinative in holding that Section 13H was a "crime of violence" under 18 U.S.C. § 16.[5] See 228 F.3d 171, 177 (2d Cir. 2000) ("[I]n

---

[5]18 U.S.C. § 16 defines the term "crime of violence" as:

16

indecent assault and battery cases, the non-consent of the victim is a touchstone for determining whether a crime 'involves a substantial risk that physical force against the person . . . may be used.'"). In adopting the reasoning of Sutherland with respect to the classification of Section 13H under the ACCA, we noted that "just as there is 'a substantial risk that force may be used in order to overcome the victim's lack of consent,' so too is there a substantial risk of physical injury from the unwanted touching." Leahy, 473 F.3d at 411 (citation omitted).

Our caselaw has also established that indecent sexual contact crimes perpetrated by adults against children categorically present a serious potential risk of physical injury. In United States v. Richards, for example, we held that unlawful sexual contact offenses against children under fourteen by a person at least three years older under Maine law are violent felonies under the ACCA. 456 F.3d 260, 264-65 (1st Cir. 2006), cert. denied, 127 S. Ct. 2097 (2007). Similarly, in United States v. Sherwood, we held that under Rhode Island law a conviction for second-degree child molestation involving the sexual touching of persons under

---

    (a) an offense that has as an element the use, attempted
    use, or threatened use of physical force against the
    person or property of another, or
    (b) any other offense that is a felony and that, by its
    nature, involves a substantial risk that physical force
    against the person or property of another may be used in
    the course of committing the offense.

17

thirteen years of age typically presents "a serious potential risk of physical injury to another" within the meaning of the sentencing guidelines even though the statute can encompass both violent and non-violent conduct. 156 F.3d 219, 221 (1st Cir. 1998); cf. United States v. Meader, 118 F.3d 876, 881-82 (1st Cir. 1997) (concluding that a statutory rape conviction qualified as a crime of violence where the charging documents established that the crime involved a thirty-six-year-old man and a thirteen-year-old girl because of the age of the girl and the "chronological gap").

These decisions rest on the common-sense recognition that crimes involving indecent sexual contact with a child "typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures." Sherwood, 156 F.3d at 221 (quoting United States v. Velazquez-Overa, 100 F.3d 418, 422 (5th Cir. 1996)); see, e.g., United States v. Curtis, 481 F.3d 836, 838-39 (D.C. Cir. 2007) ("[C]ourts have universally recognized that sex offenses against minors are crimes of violence . . . because of the substantial likelihood that the perpetrator will use physical force to ensure the child's compliance."); United States v. Munro, 394 F.3d 865, 870 (10th Cir. 2005) (attempted sexual activity with a minor is a crime of violence because "[i]n cases involving sex crimes against minors, we have found that 'there is always a

18

substantial risk that physical force will be used to ensure [a] child's compliance' with an adult's sexual demands" (citation omitted)); United States v. Pereira-Salmeron, 337 F.3d 1148, 1153-54 (9th Cir. 2003) ("[S]exual contact with a minor inherently presents a risk of force sufficient to characterize such misconduct as a 'crime of violence' under the Sentencing Guidelines.").

To be sure, a sex crime involving indecent touching of a child does not have an obvious analogue in the enumerated crimes in clause (ii). Still, the substantial likelihood of physical injury inherent in indecent sexual contact crimes by an adult with a child presents at least as much risk as burglary. Cf. Velazquez-Overa, 100 F.3d at 422 ("If burglary, with its tendency to cause alarm and to provoke physical confrontation, is considered a violent crime under 18 U.S.C. § 16(b), then surely the same is true of the far greater intrusion that occurs when a child is sexually molested."); see also Sutherland, 228 F.3d at 177 (citing the Velazquez-Overa child molestation-burglary analogy with approval).

Appellant argues that Section 13B, unlike other child sexual contact offenses, does not qualify categorically under the residual clause because it expressly provides that the child's consent is not a defense and does not require a minimum age gap between victim and perpetrator. As such, the statute sweeps in consensual sexual contact between similarly-aged teenagers, for example, a fourteen-year-old and a thirteen-year-old who are simply

making out. Because this situation would not ordinarily create a "serious potential risk of physical injury," he maintains that conviction under Section 13B cannot be classified as a violent felony because it spans both violent and non-violent conduct. Although this argument gives us pause, it ultimately fails.

While the statute potentially punishes consensual sexual touching between underage teenagers, the likelihood that a conviction for a Romeo-and-Juliet[6] offense could serve as an ACCA predicate is low. We have scoured the caselaw and could not discover a single reported case in which a juvenile was convicted under Section 13B for consensual sexual activity with a similarly-aged youth. Counsel has pointed us to none under Massachusetts law. Significantly, the ACCA prescribes a higher standard for sentencing enhancements based on juvenile convictions. A juvenile conviction qualifies as a violent felony only if it involves the "use or carrying of a firearm, knife, or destructive device" and otherwise satisfies the criteria applicable to adult offenses. See 18 U.S.C. § 924(e)(2)(B). Thus to trigger ACCA enhancement, a juvenile conviction under the statute would necessarily involve an unconsented-to indecent sexual touching of a child under fourteen while using or carrying a weapon.

Further, in order for a juvenile to be tried as an adult

_____

[6]As Shakespeare tells us, Juliet was but "[a] fortnight and odd days" from the age of fourteen. William Shakespeare, Romeo and Juliet, Act I, Sc. iii.

20

in Massachusetts, a defendant would have to be at least fourteen years old and, under the law applicable at the time of Cadieux's 1989 conviction, a judge would have to issue a written order "supported by clear and convincing evidence 1) that the child presents a significant danger to the public as demonstrated by the nature of the offense charged and the child's past record of delinquent behavior, and 2) that the child is not amenable to rehabilitation as a juvenile." Commonwealth v. Traylor, 29 Mass. App. Ct. 584, 563 N.E.2d 243, 244 (1990) (citation and internal quotation marks omitted; emphasis added); see also Mass. Gen. Laws ch. 119, § 61 (repealed 1996). Accordingly, as a practical matter, the odds that a conviction for consensual touching between similarly-aged youths would qualify as an ACCA predicate approach zero. Cf. Gonzales v. Duenas-Alvarez, __ U.S. __, 127 S. Ct. 815, 822 (2007) ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.").

Moreover, under the "categorical approach," the sentencing court is allowed to look at undisputed facts in the record. Here, under Section 13B, we know that the victim is always under fourteen years of age. Compare Sherwood, 156 F.3d at 221

21

(despite fact that "the chronological gap between a perpetrator and his victim is not obvious from the face of the [Rhode Island second-degree child molestation] statute, we do know from the statute that, in every instance, the victim is at most 12 years old" and that offenses under the statute "are generally perpetrated by an adult").  Further, as appellant concedes, under Shepard, we can look at the indictment.  The 1989 indictment establishes that he pled guilty to violations of Section 13B occurring on various occasions between September 1984 and February 1985.  See 544 U.S. at 26 (approving use of charging document for ACCA enhancement).  The presentence report, to which Cadieux did not object, indicates that Cadieux was born on September 20, 1959.  See Miller, 478 F.3d at 52 (adopted admissions by a defendant may be used for ACCA enhancement purposes); cf. United States v. Morillo, 8 F.3d 864, 872-73 (1st Cir. 1993) ("A defendant that accepts . . . without contesting the facts set forth in the [presentence] report can scarcely be heard to complain when the sentencing court uses those facts to make its findings.").  Thus, Cadieux was an adult in his mid-twenties when he committed the offense at issue.  This chronological age gap falls squarely within the sexual touching caselaw holding that age differences of this magnitude necessarily create a serious potential risk of physical injury to another.

We understand that establishing a dividing line in this area involving like-aged teenagers is "fraught with peril."  United

22

States v. Sacko, 178 F.3d 1, 5 (1st Cir. 1999) (involving statutory rape of a fourteen-year-old girl by someone over eighteen). If and when a person is convicted under section 13B for consensual sexual contact with a youth of the same or similar age, and sentencing enhancement based on that conviction is sought, we reserve the right to revisit the issue. Compare Emile v. INS, 244 F.3d 183, 188 (1st Cir. 2001) (construing Section 13B to constitute the deportable offense of "sexual abuse of a minor" under the alien removal statute, but reserving the right to revisit that classification in the event removal is sought for a defendant convicted of "conduct shown to be markedly less serious" than the statute was interpreted to capture); cf. United States v. Shannon, 110 F.3d 382, 388-89 (7th Cir. 1997) (en banc) ("mindful that statutory rape is more often thought of as a 'morals offense' than as a 'crime of violence,'" limiting holding that sexual contact with a minor is a crime of violence to thirteen-year-olds and younger, though statute applied to persons under the age of sixteen).

Accordingly, Appellant's 1989 conviction was properly classified as a "violent felony" under the ACCA's residual provision.

## C. Uncharged Prior Convictions

Finally, Appellant contends that the district court found him to be an armed career criminal, and improperly imposed an

enhanced sentence, where the facts of all three prior convictions underlying that determination were not charged in the indictment, found beyond a reasonable doubt, or admitted by defendant. <u>See</u> <u>United States</u> v. <u>Booker</u>, 543 U.S. 220 (2005). Because Appellant did not raise this objection below, we review for plain error. <u>United States</u> v. <u>Olano</u>, 507 U.S. 725, 732-33 (1993). In <u>James</u>, the Supreme Court re-confirmed that the Sixth Amendment does not require that prior convictions be treated as an element of the offense for Sixth Amendment purposes. 127 S. Ct. AT 1600 n.8 (citing <u>Almendarez-Torres</u> v. <u>United States</u>, 523 U.S. 224 (1998)); <u>see also</u> <u>Cunningham</u> v. <u>California</u>, __ U.S. __, 127 S. Ct. 856, 869 (Jan. 22, 2007). Appellant's sentence is affirmed.

## Conclusion

For the reasons stated above, Cadieux's conviction and sentence are **AFFIRMED**.