# United States Court of Appeals
## For the First Circuit

No. 19-2111

UNITED STATES OF AMERICA,

Appellee,

v.

SCOTT ESTES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch and Barron, Circuit Judges,
Burroughs,[*] District Judge.

Robert C. Andrews, by appointment of the Court, for appellant.
Julia M. Lipez, Assistant United States Attorney, with whom
Halsey B. Frank, United States Attorney, was on brief, for
appellee.

January 14, 2021

---

[*] Of the District of Massachusetts, sitting by designation.

**Burroughs, District Judge.** The defendant, Scott Estes, appeals from the district court's grant of the Government's motion in limine to admit a recording of a 911 call placed by Estes' girlfriend. Estes argues that his girlfriend's statements during the call are testimonial in nature, triggering his Confrontation Clause rights under the Sixth Amendment, and that the district court should have therefore precluded the Government from introducing the recording without calling the declarant as a witness at trial. He also argues that, even assuming the statements contained in the 911 recording are non-testimonial, the district court erred by allowing the recording to be admitted because he has an independent right to face-to-face confrontation and because there was no applicable hearsay exception. We hold that the statements in the 911 recording are non-testimonial and that where a statement is non-testimonial, the Confrontation Clause is not implicated and the only bar to admission is the rule against hearsay. Because the district court did not abuse its discretion in applying a hearsay exception, we affirm.

**I.**

A. Facts

Katherine Hutchins ran a house cleaning service. On the morning of November 13, 2017, she and her boyfriend of a few months, Estes, had just finished cleaning a house together and were leaving the job. Hutchins was driving. During the car ride,

Hutchins learned that Estes had stolen a firearm from the house that they had just cleaned.  Estes loaded this firearm, showed it to Hutchins, and pointed it at her.  Estes had previously told Hutchins that he was a felon and could not have a gun.  She also believed that he might be using drugs because he was behaving erratically and had needles in his pocket.

During the car ride, at approximately 11:20 AM, Hutchins called 911.[1]  When she made the 911 call, Estes had temporarily left the vehicle to help another motorist.  Hutchins began the call by stating that Estes "loaded a gun, and he has it in his pocket and he's a felon."  The 911 dispatcher said that he would send officers to her location.[2]  She then told him that she would have to pretend to be speaking to someone other than the police because she did not want to "get shot."  She further explained that Estes had "needles in his pocket," was "not good," and had loaded the gun and pointed it at her, causing her to be "a little nervous right now."  She added that she was "shaking" and "scared," and implored the police to take her call "really seriously right

_____

[1] The district court granted the Government's motion in limine based on a version of the 911 recording and transcript that had been redacted to exclude those portions of the conversation that constituted hearsay within hearsay.  The redacted version of the transcript, the admission of which is the subject of Estes' appeal, appears in his Appendix.

[2] Throughout the call, the 911 dispatcher asked questions designed to ascertain Hutchins' and Estes' locations, both in absolute terms and as compared to one another.

- 3 -

now." The 911 dispatcher assured her that the police were taking her call seriously and again told her that he was sending officers to her location.

At that point, presumably because Estes had re-entered the vehicle, Hutchins began pretending to speak to her credit card company. The 911 dispatcher played along with Hutchins' ruse, encouraging her to "keep makin[g] . . . conversation." After a few minutes, Hutchins told the 911 dispatcher that Estes was running into his friend's apartment and that, as soon as officers arrived, she would show them where Estes had gone. She reiterated that Estes was "probably going to shoot [her]," adding that she was "nervous" and "scared shitless." The 911 dispatcher told her that he wanted to ensure that she was safe and asked her to stay on the phone with him until officers arrived at the scene. They discussed which apartment Estes had entered, and she volunteered additional information, including Estes' name and birthdate. Officers then arrived, and Hutchins ended the call.

Prior to, and during, the 911 call, Hutchins communicated via text and/or Facebook Messenger, with two individuals, Ashley Wing (the client whose house she and Estes had cleaned that morning) and Bethany Maheux.[3] In her text exchange with Wing, which began at 10:59 AM (approximately twenty minutes

---

[3] Hutchins' communications with Wing and Maheux also appear in Estes' Appendix.

before the 911 call) and continued until 11:35 AM, Hutchins attempted to determine whether Estes had stolen the gun from Wing's home. Wing confirmed that the gun was hers. Hutchins asked Wing to call the police and wrote "[p]lease know he loaded it and I am scare [sic] I will be hurt." In her exchange with Maheux, which began at approximately 11:06 AM, Hutchins tried to determine whether Maheux had purchased a gun for Estes. Maheux denied doing so, and when Hutchins asked her to call the police, Maheux replied that she was "not involved" and encouraged Hutchins to call the police herself.

B. Procedural History

Estes was indicted for possessing a stolen firearm and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(j) and 922(g)(1), respectively. Prior to trial, the Government filed a motion in limine seeking to introduce the 911 recording without calling Hutchins as a witness. Estes opposed the motion. After a hearing, the district court orally granted the Government's motion. The district court concluded that the statements in the 911 recording were non-testimonial and therefore did not implicate the Sixth Amendment. The district court then analyzed whether there were any applicable hearsay exceptions and found that the 911 recording was admissible under Federal Rules of Evidence 803(2) (excited utterance) and 803(1) (present sense impression) and that parts of the recording were also admissible

- 5 -

under Rule 803(3) (then-existing mental, emotional, or physical condition).

After the district court's ruling on the motion in limine, Estes entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2), reserving his right to appeal the district court's order granting the motion. The district court then sentenced Estes to thirty-six months' imprisonment, and Estes timely appealed.

**II.**

On appeal, Estes challenges the district court's determination that the statements in the 911 recording were non-testimonial and asserts that even if they were non-testimonial, the district court still should not have admitted the recording because Estes has a right to confront Hutchins, and further, that no hearsay exception applies.

This Court reviews the question of whether a given statement is testimonial de novo, United States v. Brito, 427 F.3d 53, 59 (1st Cir. 2005) (citing United States v. Tse, 375 F.3d 148, 159 (1st Cir. 2004)), and reviews the question of whether a district court properly applied a hearsay exception for abuse of discretion, Packgen v. Barry Plastics Corp., 847 F.3d 80, 90 (1st Cir. 2017) (citing Shervin v. Partners Healthcare Sys., Inc., 804 F.3d 23, 41 (1st Cir. 2015)).

A.    The Statements in the 911 Recording Are Non-Testimonial

"In Crawford v. Washington, the Supreme Court held that the Sixth Amendment's Confrontation Clause bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination.'"  United States v. Cadieux, 500 F.3d 37, 40 (1st Cir. 2007) (quoting Crawford v. Washington, 541 U.S. 36, 53-54 (2004)), cert. denied, 552 U.S. 1190 (2008). The determination as to whether a statement is testimonial is an "objective[] evaluat[ion of] the circumstances in which the encounter occurs and the statements and actions of the parties." Michigan v. Bryant, 562 U.S. 344, 359 (2011).

In Cadieux, this Court assessed whether statements in a 911 recording were testimonial within the meaning of Crawford and set forth an analytical framework based on the Supreme Court's decision in Davis v. Washington.  "[S]tatements made to a 911 operator 'are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.'"  Cadieux, 500 F.3d at 41 (quoting Davis, 547 U.S. 813, 822 (2006)).  "By contrast, such statements are testimonial 'when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events

- 7 -

potentially relevant to later criminal prosecution.'" Id. (quoting Davis, 547 U.S. at 822). A number of factors "should guide courts in this objective inquiry, including":

> (1) Was the declarant speaking about current events as they were actually happening, requiring police assistance rather than describing past events?
>
> (2) Would a reasonable listener conclude that the declarant was facing an ongoing emergency that called for help?
>
> (3) Was the nature of what was asked and answered during the course of a 911 call such that, viewed objectively, the elicited statements were necessary to be able to resolve the present emergency rather than simply to learn . . . what had happened in the past?
>
> (4) What was the level of formality of the interview? For example, was the caller frantic, in an environment that was neither tranquil nor safe?

Id. (internal citations and quotation marks omitted).

A straightforward application of the Cadieux factors to the facts here leads to the conclusion that the statements in the 911 recording are non-testimonial.[4]

With respect to the first factor, the declarant, Hutchins, was speaking about current events in real time. She told the 911 dispatcher that Estes possessed a loaded gun in his

_____

[4] At oral argument, Estes suggested that the Cadieux factors are inappropriate and inconsistent with Supreme Court guidance. Because we derived the Cadieux factors directly from the Supreme Court's decision in Davis, see Cadieux, 500 F.3d at 41, we find Estes' argument to be without merit.

pocket.  She also repeatedly reported on her current location, both in absolute terms and as compared to Estes.  Finally, she described her feelings in the present tense ("I'm shaking," "I'm really nervous," "I'm scared shitless"), and requested immediate assistance from the police.

With respect to the second factor, a reasonable listener would conclude that Hutchins faced an ongoing emergency that called for help.  During the call, she was in a vehicle with (or otherwise in close proximity to) Estes, a felon who was in possession of a loaded gun that she believed he had stolen.  Moreover, he had already pointed the gun at her and was otherwise acting in an odd and unstable manner.  Importantly, Hutchins communicated each of these facts to the 911 dispatcher during the call.

With respect to the third factor, the dispatcher's questions were designed to elicit answers necessary to resolve the emergency.  He asked her where Hutchins and Estes were, both in absolute and relative terms, to be able to safely dispatch law enforcement to her location.  Additionally, the fact that the 911 dispatcher played along with Hutchins' ruse regarding a phony call with her credit card company shows that he believed there was an ongoing situation that warranted such subterfuge.  Finally, the 911 dispatcher's statements and questions evidence his concern with Hutchins' wellbeing and suggest that he was attempting to safely resolve the situation.  For instance, he asked her "to stay

- 9 -

on the phone with [him] until [she'd] made contact with the officer" and told her that he "want[ed] to make sure [she was] safe."[5]  In light of those questions, the background information that the dispatcher elicited is also best understood to be designed to assist him in resolving the emergency.

With respect to the fourth factor, the 911 call was informal and took place while Hutchins was near a felon who had recently pointed a loaded gun at her.  Despite remaining relatively calm and not sounding "frantic," Hutchins was undoubtedly in an environment that was neither tranquil nor safe.

Estes' arguments as to why the statements in the 911 recording are testimonial are unavailing.  First, he argues that the ongoing emergency had ended by the time the 911 call was made because Hutchins placed the call twenty to thirty minutes after Estes pointed the gun at her, by which time he had put the gun in his pocket.  Hutchins likely waited as long as she did to place the 911 call because she was in a car with Estes, who would have overheard at least her side of any telephone conversation.  The record indicates that she called 911 as soon as Estes left the vehicle, which allowed her to make the call without being overheard.  The emergency had not concluded simply because Estes

_____

[5] The 911 dispatcher also asked questions about Estes' name and birthdate after Hutchins had already volunteered that information.

- 10 -

was no longer brandishing the loaded gun. He still had the gun and could have taken it from his pocket at any time.

Second, Estes argues that Hutchins' investigation into Estes' acquisition of the gun renders the statements in the 911 recording testimonial. The fact that she communicated with Wing and Maheux prior to placing the 911 call does not negate the fact that Hutchins was with an individual who had recently pointed a loaded gun at her. Additionally, as the Government notes, Hutchins' investigation into how Estes obtained the gun would, quite reasonably, inform her level of concern. Her level of concern for her own safety was understandably raised by learning that he had just stolen a gun from Wing's home while they were cleaning it, knowing that he was a felon who should not have a gun at all, and experiencing his reckless disregard for the law and her safety. Her realization that he might be high on drugs likely heightened her level of concern. Hutchins' texts and messages with Wing and Maheux confirm that she was fearful and believed that an emergency was underway. In fact, she asked both Wing and Maheux to call the police, perhaps because she felt she could not safely do so herself while Estes was in the car.

In sum, under the factors set forth in <u>Cadieux</u> and consistent with this Court's precedent, the statements in the 911 recording here are non-testimonial. <u>See</u> <u>Cadieux</u>, 500 F.3d at 41 (finding statements in a 911 recording non-testimonial where

- 11 -

caller was speaking about events in real time and asked for police assistance, and where the dispatcher's questions were tailored to elicit pertinent facts regarding the emergency); Brito, 427 F.3d at 62-63 (finding statements in a 911 recording non-testimonial where caller heard gunshots, then saw a man with a gun who pointed the gun at her and remained in her sight).

B.    The Confrontation Clause Is Not Implicated by Non-Testimonial Statements and the District Court Did Not Abuse Its Discretion by Admitting the 911 Recording

Estes argues that regardless of whether the statements in the 911 recording are testimonial, he has a right to confront Hutchins at trial. He is incorrect.[6] It is well-settled that when a statement is non-testimonial, there is no right to confrontation. See Bryant, 562 U.S. at 354 ("We therefore limited the Confrontation Clause's reach to testimonial statements . . . ."); Davis, 547 U.S. at 821 ("Only [testimonial] statements . . . cause the declarant to be a 'witness' within the meaning of the Confrontation Clause. It is the testimonial character of the

---

[6] The two Supreme Court cases that Estes cites, Maryland v. Craig and Coy v. Iowa, are inapposite. Both pre-date Crawford, the seminal Supreme Court Confrontation Clause case, which established the current testimonial versus non-testimonial test. In any event, those cases concerned trial testimony and involved clearly testimonial statements. Craig, 497 U.S. 836, 860 (1990) (allowing child victim to testify via one-way closed-circuit television did not violate Confrontation Clause); Coy, 487 U.S. 1012, 1020-21 (1988) (finding Confrontation Clause violation where child victim testified from behind a large screen). Craig and Coy do not concern a defendant's right to confrontation with respect to non-testimonial statements, like the ones at issue here.

statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." (citation omitted)); United States v. Ponzo, 853 F.3d 558, 578 (1st Cir. 2017) ("The Confrontation Clause . . . bars admission of testimonial hearsay unless 'the declarant is unavailable' and 'the defendant had a prior opportunity' for cross-examination . . . ." (quoting Crawford, 541 U.S. at 59)); United States v. Castro-Davis, 612 F.3d 53, 64 n.14 (1st Cir. 2010) ("After Davis, however, non-testimonial hearsay no longer implicates the Confrontation Clause at all."); United States v. Figueroa-Cartagena, 612 F.3d 69, 85 (1st Cir. 2010) ("The threshold question in every case is whether the challenged statement is testimonial.  If it is not, the Confrontation Clause 'has no application.'" (quoting Whorton v. Bockting, 549 U.S. 406, 420 (2007))); United States v. Earle, 488 F.3d 537, 542 (1st Cir. 2007) (noting that the Confrontation Clause "applies only to testimonial hearsay" (citing Davis, 547 U.S. at 821)); see also United States v. Rodriguez-Berrios, 573 F.3d 55, 61 n.4 (1st Cir. 2009) (rejecting argument that admission of non-testimonial hearsay violated the Confrontation Clause).

Accordingly, because the statements in the 911 recording are non-testimonial, the only remaining question is whether the

- 13 -

district court abused its discretion in admitting the recording pursuant to a hearsay exception.[7] We find that it did not.

The district court found that three hearsay exceptions were applicable,[8] but we need discuss only the first in any detail because one hearsay exception is sufficient to support the 911 recording's admission. Under the "Excited Utterance" exception, a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is admissible. Fed. R. Evid. 803(2). At the time Hutchins placed the call, Estes had recently pointed a loaded gun at her, which is unquestionably a startling event. Although some time had passed, Hutchins was still "under the stress of excitement" for the duration of the call, id., especially given that Estes was still nearby with the gun. See United States v. Rondeau, 430 F.3d 44, 48 (1st Cir. 2005) (finding that where 911 call was made "as or immediately after [someone] threatened [the caller] with the gun," the statements were excited utterances); Brito, 427 F.3d at 62–63

---

[7] Contrary to Estes' assertion, the fact that Hutchins was available to testify is of no consequence because each of the hearsay exceptions relied upon by the district court applies "regardless of whether the declarant is available as a witness." Fed. R. Evid. 803.

[8] The district court found that Federal Rules of Evidence 803(2) (Excited Utterance), 803(1) (Present Sense Impression), and 803(3) (Then-Existing Mental, Emotional, or Physical Condition) were all applicable.

(noting that statements by 911 caller who had recently had gun pointed at her were excited utterances). Thus, the district court did not abuse its discretion in admitting the 911 recording under Rule 803(2).[9]

**III.**

We affirm the district court's grant of the Government's motion in limine.

<u>Affirmed</u>.

---

[9] For the reasons articulated by the district court, we agree that the other two hearsay exceptions it applied are also applicable here.